**Hector G. ORTIZ, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**Nos. 04–88–00086–CR, 04–88–00305–CR.**

Court of Appeals of Texas,
San Antonio.

May 17, 1989.

Rehearing Denied
July 24, 1989.

Nancy B. Barohn, San Antonio, for appellant.

Fred G. Rodriguez, Susan Scolaro, Jay Brandon, Crim. Dist. Attys., San Antonio, for appellee.

Before CADENA, C.J., and BIERY and CARR, JJ.

## ON APPELLANT'S MOTIONS FOR REHEARING

BIERY, Justice.

The appellant's motions for rehearing are denied, however, the opinion of this Court delivered March 31, 1989 is withdrawn and this opinion substituted.

This case involves two felonies alleged to have been committed by appellant, Hector Garza Ortiz, on August 27, 1987. Appellant was tried by a jury for the August 27, 1987 burglary of the residence of Ms. Hortense Barber, who lived at 357 Waxwood in San Antonio, Texas (hereinafter the "Waxwood burglary"). Following his conviction, appellant was sentenced to a term of thirty years' confinement.

Although appellant was tried and convicted for the burglary occurring at 357 Waxwood, the State's evidence in that trial included much evidence of a different burglary, also occurring on August 27, 1987 about one hour earlier, at a residence located at 1415 South Olive Street (hereinafter the "South Olive Street burglary"). Having relied upon the South Olive Street burglary as part of its proof of the Waxwood burglary, the State now seeks to try appellant separately for the South Olive Street burglary.

Appellant appeals his conviction in the Waxwood burglary on the grounds that the evidence was insufficient to sustain a finding of appellant's guilt. Also, he contends that the trial court committed reversible error by failing to conduct an evidentiary hearing and by failing to quash the venire based upon appellant's timely challenge to the State's use of one of its peremptory challenges to strike Mr. Curtis McKinnon, the sole African–American member of the venire.

In connection with the South Olive Street burglary, and prior to trial, appellant filed a special plea in bar pursuant to TEX. CODE CRIM.PROC.ANN. art. 27.05 (Vernon Supp.1989). Following an evidentiary hearing, appellant's special plea of former jeopardy was denied. Appellant then filed a motion in the trial court to stay his trial of the South Olive Street indictment until such time as his jeopardy question could be reviewed. Appellant's sole point of error in the South Olive Street case is that the trial court erred in denying appellant's special plea of former jeopardy. Appellant contends that the two burglaries were not only part of the same criminal episode, but that they were in effect consolidated into the Waxwood burglary trial, which resulted in appellant's conviction.

On August 27, 1987, San Antonio Police Detectives Mike Bratton and Richard Urbanek observed Juan Martinez and appellant parked in a blue Chevrolet in front of a "known dope connection" located at Milam and Hackberry Streets. When the Chevy drove away, the detectives followed the car to South Hackberry and Boyer Streets where Juan Martinez, the driver, parked at

the rear of a business. Both Juan Martinez and appellant, who was his passenger, got out of the car and walked east on Boyer Street and then to a residence located at 1415 South Olive Street.

Detective Bratton began to follow the subjects on foot, walking next to the railroad tracks located in that area. From his vantage point, Detective Bratton observed Juan Martinez walk to the front door of the residence and knock, while appellant remained standing in the front yard. According to Detective Bratton, when no one answered, Juan Martinez walked to the rear of the residence. Shortly thereafter, Detective Bratton reported hearing loud banging noises coming from the rear of the home. Appellant then walked to the rear of the residence. About five minutes later, Detective Bratton observed Juan Martinez and appellant walk off the front porch at 1415 South Olive Street. Juan Martinez and appellant got back into the blue Chevy and drove away. Detective Bratton radioed a description of the Chevy and the occupants to other police officers in the area so that surveillance could be conducted until a burglary was confirmed.

Detectives Bratton and Urbanek then went to the residence at 1415 South Olive Street where they discovered that the rear door had been pried open. Inside, the detectives found that jewelry boxes and dresser drawers had been opened in one of the bedrooms. A television set and a stand were stacked by the front door, which had been left approximately six to eight inches open. There were pry marks on the back door, apparently made by a large screw driver or other prying instrument.

Based upon these observations, and because no one was at the 1415 South Olive residence, Detectives Urbanek and Bratton concluded that a burglary had occurred. Accordingly, Detective Bratton radioed police in the field to stop the Chevrolet and its occupants.

Although police officers had previously had the Chevy under surveillance following Detective Bratton's initial call, Mr. Martinez managed to elude them. The Chevy was not stopped, therefore, until about 45 minutes later when San Antonio Police Officer Michael McMurtrey spotted the car parked in the 200 block of East Sherman. The vehicle at this time was unoccupied. Officer McMurtrey observed Juan Martinez standing outside the vehicle on the left hand side. Officer McMurtrey then observed appellant, who was walking toward the car from the loading dock of a foam products warehouse. Both men got into the car, Juan Martinez in the driver's seat and appellant in the passenger's seat. At that time, both were placed under arrest for the burglary at 1415 South Olive Street.

Shortly thereafter, detectives Urbanek and Bratton arrived and identified both men as the same individuals they had seen committing the burglary at 1415 South Olive Street. In their search of the car, the detectives recovered a television set from the back seat of the vehicle, a stereo from the trunk, and numerous jewelry items wrapped in a handkerchief next to the passenger's side of the vehicle. In addition, a screwdriver, a hammer and some knives were found under the seat on the passenger side. The television, the stereo and some of the jewelry were later identified by the complainant, Ms. Hortense Barber, as her property (Waxwood burglary). Ms. Barber testified that she had given neither appellant nor Mr. Martinez permission to enter her residence at 357 Waxwood.

Appellant was taken into custody for processing; however, Juan Martinez took police officers to Ms. Barber's residence at 357 Waxwood, from which the stolen property had come. San Antonio Police Officer Valentine Lopez, who accompanied Mr. Martinez to that location, testified that this residence also bore pry marks and that the door there had been forced open. Because there was no direct evidence of appellant's involvement in the Waxwood burglary, the State, in the Waxwood trial, submitted evidence of the South Olive Street burglary in order to show a continuing scheme of Martinez and appellant to commit burglaries together.

We first address appellant's point of error that the evidence was insufficient to sustain a conviction of appellant for the Waxwood burglary. In reviewing the sufficiency of the evidence, this court is to determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This standard is the same in cases of direct evidence and circumstantial evidence. *Carlsen v. State*, 654 S.W.2d 444, 449 (Tex.Crim.App.1983). A finding of guilt is not reasonable if the evidence supports an inference other than appellant's guilt. *Id.*

In addition to the evidence set forth above, there was testimony that, following the South Olive Street incident, appellant and Martinez fled at high speed when they realized they were being followed by a police car. Appellant was looking back at the police officer during this flight.

Officer Lopez testified that at the time of the arrest he saw the television in the back seat of the car. Officer Lopez had been in a position to see into the back seat of the car earlier, when he was following the car, and there had been no television in the back seat at that time. Officer Lopez learned that the owner of the television lived at 357 Waxwood. Juan Martinez, appellant's companion, directed the officer to that location.

Hortense Barber testified that she lived at 357 Waxwood in San Antonio. On August 27, 1987, she received a call from police telling her about the burglary of her home. She went home about 11:30 that morning and found that her back door was open. She had left it closed and locked. The door had pry marks on it, as if it had been pried open with a screwdriver. Her stereo, television and jewelry were missing. These items were returned to her later that day by police.

Appellant took the stand in the Waxwood trial and testified that he did not commit the burglary. He did know Juan Martinez and had ridden in his car that morning. Martinez took appellant to 1415 South Olive Street saying he was going to borrow some money. Appellant further testified that he talked to a next door neighbor while Martinez walked up to the house, that he did not hear any banging noise, that he never went inside the house, and that he did not plan and commit a burglary at 1415 South Olive Street.

Appellant further testified that Martinez then dropped him off at a friend's house and that they were never pursued by police. He said that Martinez returned half an hour later, that police arrived as appellant walked up to the car and that he never got back inside the car as the police officers had testified.

The jury in the Waxwood case was properly charged on the law of parties. They were authorized to convict if they found that appellant solicited, encouraged, directed, aided or attempted to aid someone else in the commission of the offense. To determine whether one is guilty as a party to an offense, the reviewing court may look to events before, during and after the commission of the offense. *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex.Crim.App. 1987); *Phelps v. State*, 730 S.W.2d 198, 200 (Tex.App.—San Antonio 1987, no pet.).

Before the Waxwood offense, there was testimony that appellant had participated in another burglary with Juan Martinez. An eyewitness saw appellant first acting as a lookout, then joining Martinez inside the house (South Olive Street). This house was broken into by prying open the back door with what appeared to be a large screwdriver. Evidence of this burglary was admitted over objection to show "continuous scheme." This is one of the exceptions allowing evidence of an extraneous offense. *Albrecht v. State*, 486 S.W.2d 97, 100–01 (Tex.Crim.App.1972).

Within considerably less than an hour after the Waxwood offense, appellant was

in Martinez' company.[1] There was testimony that he got back into the car which had been used in both burglaries and that the television set stolen in the Waxwood burglary was in plain sight in the back seat. A large screwdriver such as that used to break into both houses was under the seat in which appellant had been sitting. Jewelry taken in the Waxwood burglary was found on the passenger seat where appellant had been sitting.

Given all these facts, it was reasonable for the jury to infer that appellant had participated in the Waxwood burglary. Even if the jury believed that appellant had not physically participated in the burglary, it was reasonable to find him guilty as a party by aiding or encouraging Martinez in the commission of the offense. The similarity of the offenses, the fact that appellant and Martinez were seen together within less than an hour before and after the Waxwood burglary and appellant's arrest with Martinez while in the Chevy containing the burglar tools and the loot from the burglary all pointed to appellant's guilt in a continuing scheme of committing burglaries.

Appellant testified that he had not been with Martinez during the burglary on Waxwood and knew nothing about that offense. But the evidence is not rendered insufficient simply because appellant presented a different version of events. *Anderson v. State*, 701 S.W.2d 868, 872 (Tex.Crim.App. 1985), *cert. denied*, 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 163 (1986). Appellant's story did not present a reasonable alternative hypothesis to his guilt. He simply denied all the incriminating evidence and accused police witnesses of fabricating much of their stories. Appellant's first point of error pertaining to the Waxwood burglary is overruled.

■ We next address appellant's point of error dealing with the State's use of one of its peremptory challenges to remove Mr. Curtis McKinnon, the sole African-American member of the venire. Prior to the commencement of the evidence at trial, appellant's attorney challenged the State's decision to strike Mr. Curtis McKennen. Appellant is not African-American.

The United States Supreme Court has held that a state's privilege to strike individual jurors through peremptory challenges is subject to the commands of the equal protection clause. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), states that a defendant may demonstrate a prima facie case of racial discrimination in the selection of his jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. In order to establish such a case, a defendant must first show that he is a member of a cognizable racial group and that the State has exercised peremptory challenges to remove from the venire members of the defendant's own race. *Batson*, 106 S.Ct. at 1723. Appellant has failed to meet this initial requirement because he is not a member of the same racial group as that of the venireman in question.

■ While appellant's equal protection argument must fail, he alternatively contends that excluding Mr. McKinnon denied him due process of law. Appellant relies on two cases to support his position. First, in *Peters v. Kiff*, 407 U.S. 493, 504, 92 S.Ct. 2163, 2169, 33 L.Ed.2d 83 (1972), the United States Supreme Court held that:

> [W]hatever his race, a criminal defendant has standing to *challenge the system* used to select his grand or petit jury, on the ground that it arbitrarily excludes from service the members of any race, and thereby denies him due process of law. This certainly is true in this case, where the claim is that Negroes were *systematically excluded from jury service*. (emphasis added)

Although *Peters* provides some support for appellant's position, the case at bar is

---

1. Appellant concedes in his motion for rehearing that the Waxwood burglary occurred between the time that he and Martinez eluded the police and the arrest, a span of 45 minutes.

distinguishable. *Peters* concerned the systematic exclusion of blacks from jury service, whereas appellant in this matter is challenging the exclusion of only one black venireman.

Appellant also relies on *Seubert v. State*, 749 S.W.2d 585 (Tex.App.—Houston [1st Dist.] 1988, pet. granted), which extends the *Peters* holding and applies it to the challenge of an individual member of the venire. The court of appeals noted that while *Batson* requires a defendant to be of the same race as the excluded jurors to assert an equal protection claim, the "same race" requirement is irrelevant to a claim of violation of due process. *Seubert*, 749 S.W.2d at 588. The court nevertheless applied the reasoning in *Batson* except for the "same race" requirement:

> *Batson* nevertheless guides our decision. Except for the same race requirement that is irrelevant in reviewing Sixth Amendment and due process claims, *Batson* is a practical model to follow in this case.
>
> The *Batson* procedure was followed here. The prosecutor was challenged concerning her decision to strike Mr. Oliver; she knew nothing of him except his race; she struck him without questioning him or seeking to question him; she gave no racially neutral reason for striking him. *Batson* requires more than silence to justify the State's peremptory strike of a black venire member. We conclude that appellant made a prima facie showing of racial discrimination in the striking of venireman Oliver, and the State did not rebut that inference.

*Id.*

We decline to follow *Seubert* and find it factually distinguishable. We hold that with respect to jury selection, appellant's right to due process is the right to a venire that fairly represents a cross-section of the community, and that right may not be invoked to invalidate the use of peremptory challenges. *Mead v. State*, 759 S.W.2d 437, 444 (Tex.App.—Fort Worth 1988, no pet.).

Even if appellant had made a prima facie showing of discrimination in jury selection, under either *Batson* or *Peters*, thus shifting the burden of disproving such a claim to the State, the State met that burden. "Once the defendant makes a prima facie showing the burden shifts to the State to come forward with a neutral explanation for challenging black jurors." *Batson*, 106 S.Ct. at 1723. The trial court must then determine if that explanation refutes the claim of racial discrimination. *Id.* at 1723–24.

In the instant case, the prosecutor gave such a racially neutral explanation. She struck the venireman in question because he was not married, had no children and did not live in the community on a daily basis. Therefore, she assumed he would have less of a stake in local law enforcement. Furthermore, she thought there had developed a special rapport between the venireman and the defense counsel, based on a shared background in railroads. The trial court found this explanation reasonable.

A trial court in this situation need not make formal findings of fact and conclusions of law. *Levy v. State*, 749 S.W.2d 176, 179 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). A trial court's ruling on a *Batson* claim is entitled to "great deference." *Batson*, 106 S.Ct. at 1724, n. 21. Such a ruling will not be overturned unless clearly erroneous. *Rasco v. State*, 739 S.W.2d 437, 439 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd).

The trial court's finding that the State's racially neutral explanation was reasonable comports with the evidence and certainly was not "clearly erroneous." *Id.* Appellant has not established a discriminatory use of peremptory challenges and has, therefore, failed to meet the requirements of *Batson*. Appellant's second point of error is overruled. The conviction of the Waxwood burglary is affirmed.

■ Having affirmed the conviction of the Waxwood burglary, we next address whether the State is precluded from prosecuting the defendant for the South Olive Street burglary under TEX. CODE CRIM.

PROC.ANN. art. 27.05 (Vernon Supp.1989). Under article 27.05, a defendant is entitled to enter a special plea of former jeopardy by asserting that:

A defendant's only special plea is that he has already been prosecuted for the same or a different offense arising out of the same criminal episode that was or should have been consolidated into one trial, and that the former prosecution:

(1) resulted in acquittal;

(2) resulted in conviction;

(3) was improperly terminated; or

(4) was terminated by a final order or judgment for the defendant that has not been reversed, set aside, or vacated and that necessarily required a determination inconsistent with a fact that must be established to secure conviction in the subsequent prosecution.

As explained in *Stevens v. State*, 667 S.W.2d 534, 537 (Tex.Crim.App.1984), this article seems to contemplate that the State may force a defendant to stand trial for two offenses arising out of the same criminal episode. Because the State has no such power of mandatory joinder, however, a trial court does not err in overruling a defendant's plea of former jeopardy based on the State's failure to join two offenses. *Id.* at 537–38. In the instant case, the State wanted to try both the Waxwood burglary and the South Olive Street burglary together; however, the appellant objected and chose to exercise his right to be tried separately.

The constitutional guarantee against double jeopardy consists of three distinct protections. It protects against:

(1) A second prosecution for the same offense after acquittal;

(2) a second prosecution for the same offense after conviction; and

(3) multiple punishments for the same offense.

*North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Appellant contends that the second of these protections will be violated if he is prosecuted for the South Olive Street burglary.

Each of these protections explicitly refers to "the same offense." In this case, there were two different criminal offenses which occurred, albeit within a very short time span. One offense occurred on South Olive Street and one occurred on Waxwood Street. There were two different victims whose separate and distinct real and personal property were violated. *See Harrison v. State*, 713 S.W.2d 760, 762–63 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd). Even when a defendant committed only a single criminal act, double jeopardy is not offended by successive prosecutions when there were two separate victims of that act. *Ex parte Rathmell*, 717 S.W.2d 33, 36 (Tex.Crim.App.1986); *see also, Garrett v. United States*, 471 U.S. 773, 790, 105 S.Ct. 2407, 2417, 85 L.Ed.2d 764 (1985). The fact that there may be a "substantial overlap in the proof" of each of these offenses does not bar the instant prosecution. *Ex parte McWilliams*, 634 S.W.2d 815, 824 (Tex.Crim.App.1980), *cert. denied*, 459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602 (1982).

Even if we assume, contrary to the State's argument, that all of the elements of burglary at 1415 South Olive Street were proven in the Waxwood burglary trial, appellant was not placed in jeopardy of being punished for the South Olive Street burglary in the Waxwood trial. The learned trial judge instructed the jury as follows:

You are instructed that if there is any testimony before you in this case regarding defendants having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the intent of the defendant, if any, in connection with the offense, if any, alleged against him in the indict-

ment in this case [Waxwood] and for no other purpose.

We must presume that the jury followed the trial court's instructions to consider the extraneous burglary (South Olive) only as probative evidence of the intent element of the Waxwood burglary.

The cases relied upon by appellant involve situations where the defendant has committed one act but the State seeks to make two offenses out of that act. *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (car theft and joy riding); and *Ex parte Peterson*, 738 S.W.2d 688 (Tex.Crim.App.1987) (driving while intoxicated and involuntary manslaughter); *Herrera v. State*, 756 S.W.2d 120 (Tex.App. —Fort Worth 1988, pet. ref'd) (sexual assault and burglary of a habitation with intent to commit sexual assault). If the appellant's analysis were correct, there would be considerable motive to commit as many burglaries as possible within a short time span in order to avoid prosecution for all but one. This result we decline to approve. The appellant's sole point of error in the South Olive Street burglary is overruled.

The judgment of the trial court in Waxwood is affirmed and the ruling of the trial court in South Olive Street on the special plea is likewise affirmed.