Jones v. State 






NO. 10-90-008-CR

IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

          JOHNNY LEE JONES,
                                                                                            Appellant
          v.

          THE STATE OF TEXAS,
                                                                                            Appellee

* * * * * * * * * * * * *

 From 54th Judicial District Court
McLennan County, Texas
Trial Court # 89-36-C

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
          Points on appeal in this burglary case relate to Batson, an in-court identification, and an
alleged comment on Appellant's failure to testify. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct.
1712, 90 L.Ed.2d 69 (1986). The judgment will be affirmed.
          Appellant, who is black, claims the State violated Batson when it used peremptory strikes
to eliminate three blacks from the jury. A prosecutor had placed question marks beside the names
of the six blacks on the jury list along with the notation "B.M." and "B.F.," indicating "black
male" and "black female." The State used peremptory strikes against black jurors Doris
McKamey (juror 10), Leonard Robinson (juror 15), and Carolyn Green (juror 31). Two blacks
(jurors 4 and 5) served on the jury, and one black (juror 32), who was within the "strike zone,"
was not reached because of a "double strike" of another juror. The State did not use a peremptory
strike against juror 32. 
          Appellant's first point is based on the failure of the trial court to enter findings of fact and
conclusions of law after denying the Batson motion. A court does not have to enter findings and
conclusions unless it determines that the state has used its peremptory strikes in a racially
discriminatory manner. Ortiz v. State, 773 S.W.2d 941, 946 (Tex. App.—San Antonio 1989, pet.
ref'd). Findings and conclusions were not required because the court impliedly found when it
denied the motion that the State had not discriminated. See id. Point one is overruled.
          Appellant made a prima facie showing under Batson by establishing that the prosecutor
used peremptory strikes against blacks and other facts and circumstances raised an inference that
the blacks were stricken because of their race. See Batson, 106 S.Ct. at 1723; compare Powers
v. Ohio, U.S. , 111 S.Ct. 1364, 1366, L.Ed.2d (1991) (holding that defendant and
excluded juror need not be the same race). 
          The prosecutor then responded with these reasons for using a peremptory strike against
Doris McKamey: 
Doris McKamey is very young. She's 25 years of age. When I talked with her I didn't
feel a good [rapport] with her. Mainly age was the primary reason.
He continued his explanation of why McKamey and other jurors were struck because of age:
On McKamey, she was 25 years old. She was a - she's very young. We tried to strike a
number of people in that very young age range. I like to keep as many people off the jury
under 30 as I can. We, for instance, struck number eight, who is just above her, Dawn
Rachelle Simpson [a white juror], who is 24 for that reason. Carrie Casey [a white juror],
who is 21, I normally would have struck except she works for the police department. So
we couldn't get everybody off that was under 30, but we tried to use our strikes in that
direction.
The prosecutor gave these reasons for striking Leonard Robinson:
. . . Leonard Earl Robinson, was unemployed. And also had been arrested for a
criminal offense, sounded like U.C.W. He informed us that he had been arrested for an
offense. Between the two things, being unemployed, arrested for an offense, those are
things that I would normally strike jurors for, and did.
This was the reason given for striking Carolyn Green: 
As far as number 31, Carolyn Green, she seemed to me to express, not by my
questioning but the questioning by the defense, a strong leaning toward rehabilitation, and
that was the reason for the strike there.
          When questioned by defense counsel, the prosecutor said he placed question marks beside
the names of jurors he was not sure about, which included sixteen of the first thirty-two members
of the panel. Question marks appeared beside the names of the six black jurors along with the
notations "B.M." and "B.F." The prosecutor offered this explanation for the notations "B.M."
and "B.F.":
These are one way I can remember who jurors are when I look at them. Obviously black
[female], black male is one way to remember. ["Beard," which was written above the
name of a non-black juror,] was another. Those are the only distinguishing things that
were on the list. On another one up here, on number six over Jacquelyn Bryant I wrote
["young girl"].
          McKamey, age 25, was purportedly struck because of her age and a lack of "rapport," both
race-neutral reasons. One prosecutor listed each juror's age in his notes while the other marked
jurors thirty-one or younger, i.e., within ten years of Appellant's age. The State used peremptory
challenges against two white jurors, ages twenty-four and twenty-six, and against three of the four
youngest panel members. The State did not strike Carrie Casey, the youngest panel member who
worked for the police department, because the prosecutors believed that the defense would likely
strike her—which is what happened. Appellant points out, however, that the State used
peremptory strikes against only three of the eight panel members who were age thirty or under. 
          The prosecutor gave two racially neutral reasons for striking Leonard Robinson: he was
unemployed and had been arrested for an offense. These reasons were not challenged at the
Batson hearing. When asked whether his prior arrest would influence him as a juror, Robinson
gave an equivocal answer—"not necessarily"—ending his response with the statement, "I know
a lot of people who have been arrested." The record does not show that any other juror with these
same characteristics remained on the jury panel. 
          Carolyn Green was purportedly struck because the prosecutor believed she had a "strong
leaning" toward rehabilitation. Appellant argues that several other jurors had stronger "leanings"
toward rehabilitation than Green but were not stricken. Defense counsel extensively questioned
panel members about punishment versus rehabilitation. One prosecutor wrote "rehabilitation" next
to Green's name in his notes, while the other wrote "rehab" and "rehabilitate" next to the names
of two white jurors who were also struck by the State. No other notations about rehabilitation
appear in the prosecution's notes. 
          The presence of one or more of the following factors suggests a racially based peremptory
challenge:
1. The reason given for the peremptory challenge is not related to the facts of the case;
2. A lack of questioning or meaningful questioning of the challenged juror;
3. Disparate treatment, i.e., persons with the same or similar characteristics as the
challenged juror were not struck;
4. Disparate examination of members of the venire, i.e., questioning a challenged juror
to evoke a certain response without asking the same question of other panel members; and
5. An explanation based on a group bias where the group trait is not shown specifically
to apply to the challenged juror.
Whitsey v. State, 796 S.W.2d 707, 713-14 (Tex. Crim. App. 1989).      None of these factors are
present in the record. The reasons given by the State for striking the black jurors—age, lack of
rapport, employment status, criminal record, and views on rehabilitation versus punishment—are
race-neutral, of legitimate concern to the prosecution, and reasonably related to the facts of the
case. See Garza v. State, 739 S.W.2d 374, 375 (Tex. App.—Corpus Christi 1987, no pet.) (age);
Holman v. State, 772 S.W.2d 530, 533 (Tex. App.—Beaumont 1989, no pet.) (rapport); York v.
State, 764 S.W.2d 328, 331 (Tex. App.—Houston [1st Dist.] pet. ref'd) (unemployed); Anderson
v. State, 758 S.W.2d 676, 680 (Tex. App.—Fort Worth 1988, pet ref'd) (prior trouble with the
law); Salazar v. State, 745 S.W.2d 385, 388 (Tex. App.—Fort Worth 1987), rev'd on other
grounds, 795 S.W.2d 187 (Tex. Crim. App. 1990) (rehabilitation versus punishment). Moreover,
the black jurors were meaningfully and not disparately questioned; they were not questioned in
a manner designed to elicit a response that would provide or disguise a pretext for striking them;
the State struck white and black jurors with the same characteristics; and group bias was not used
to justify the strikes. 
          Moreover, two blacks served on the jury; their percentage on the jury (16.67%) exceeded
their percentage (13.9%) on the panel from which the jury was selected. Finally, the State
adequately explained its strikes against black jurors. These factors affirmatively support the
court's ruling. See id. at 724 (on rehearing) (citing U.S. v. Williams, 822 F.2d 512, 515-16 (5th
Cir. 1987)). 
          Viewing the evidence in the light most favorable to the court's ruling, the trial court could
have reasonably found that the State gave legitimate, clear, and reasonably specific reasons for
exercising its peremptory challenges against McKamey, Robinson, and Green and that the strikes
were not racially motivated. See Keeton v. State, 749 S.W.2d 861, 879 (Tex. Crim. App. 1988). 
The ruling denying the Batson motion was not clearly erroneous because it is supported by the
record. See Whitsey, 796 S.W.2d at 721 (on rehearing). Point two is overruled. 
          Shortly after the burglary, Evelyn Dai and Steve Hancock selected Appellant's photograph
from a "photo-spread" as one of the persons who committed the offense. His was the only
photograph in the spread which displayed a "Waco Police" identification sign. Appellant contends
in point three that the court erred when it refused to suppress his in-court identification which was
based on a suggestive photo-spread.
          An in-court identification is "tainted" by a pretrial photo-spread if (1) the photographic
display is suggestive and (2) the suggestive procedure gives rise to a substantial probability of
irreparable misidentification. Cantu v. State, 738 S.W.2d 249, 251 (Tex. Crim. App. 1987). The
reliability of the in-court identification must be determined from the totality of the circumstances. 
Id. Furthermore, the substantial probability of misidentification does not generally arise when the
witnesses base their identifications exclusively on a recollection of the events witnessed and not
the pretrial procedure. Rogers v. State, 774 S.W.2d 247, 260 (Tex. Crim. App. 1989).
          Assuming that the pretrial photo-spread was suggestive, we must determine from the
totality of the circumstances whether it gave rise to a substantial probability of irreparable
misidentification. Among the factors to consider in reaching this determination are: (1) the
opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree
of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of
certainty demonstrated by the witness at the pretrial identification; and (5) the length of time
between the pretrial identification and the crime. See Cantu, 738 S.W.2d at 252.
          Dai testified at the suppression hearing that at approximately 11:00 A.M. she heard
prolonged knocking at the door of a private office in a home not open to the public. Having been
instructed not to open the door, Dai went to the door and peeped outside through its window. She
observed Appellant for at least a minute standing just on the other side of the door, about a foot
away from her. Then Appellant walked away, and Dai went back to work until she heard a dog
barking in the backyard. She went to a kitchen window and observed Appellant and another black
male a few feet away "working on the yard gate." Dai, who explained that "it was darker inside
and brighter outside so [she could] see everything very clearly," saw the men open the gate and
begin to "work on the door" at the back of the house. Dai called the police and watched for
almost fifteen minutes until the men opened the screen door and began to "work" on the wooden
door. She then ran out the front door to get help. The next time she saw the men they were one-hundred to two-hundred feet from her, running away with her purse.
          Although claiming that she had a "deep impression, especially [of] his eyes, because they
were so close," Dai could only describe Appellant to police in very general terms as a black male. 
The following day, however, Detective Anderson showed her a photo-spread and Dai
"immediately" selected Appellant as the man she had observed at the front door of the house,
breaking into the back of the house, and running away with her purse. Dai testified at the hearing
that she did not even notice the "Waco Police" identification sign shown in Appellant's photograph
and that it did not influence her selection. Instead, she claimed that she identified him in the
photo-spread and in court during the hearing based "on [her] impression of the day that [she] saw
him before he broke in" her office. Although fifteen months had elapsed between the burglary and
trial, Dai said she would have identified him in court without ever having seen the photo-spread.
          Hancock, who responded to Dai's call for help, saw two men jump the fence at Dai's
office. He noticed that one of the men had a purse, and he began to chase them. At this point,
Hancock was approximately fifteen to twenty feet from the fleeing men. He said that during the
chase both men turned several times to look over their shoulders and that he got a good five- to
ten-second look at both of them. Furthermore, Appellant, the shorter man, shouted "You better
leave us alone," and the other man threw a stick at him. Hancock said that he chased Appellant
for a block and a half but was unable to catch him. He testified that, because this was the first
time he had ever chased anyone, he remembered the event vividly.
          When Anderson showed him the photo-spread, Hancock said that he recognized Appellant
— "no doubt." Hancock identified Appellant in court during the hearing based on his recollection
of the chase. He could not, however, remember the description that he gave to the police nor
could he remember specifically what Appellant was wearing on the day of the burglary.
          Officer Anderson testified at the suppression hearing that Dai "immediately" picked
Appellant's picture from the photo-spread, but that Hancock took "[a] few seconds[, a] minute"
before selecting his photograph. Anderson said she did nothing to influence either Dai or Hancock
while they were viewing the photo-spread.
          Although Dai and Hancock provided police with only a general description of Appellant,
they each had a good opportunity to observe him during the offense or his flight from the scene. 
Each claimed to have paid close attention to the event because of its impact on them. 
Furthermore, both displayed a high level of certainty in their identification of Appellant. The time
between the offense and the trial, although relevant, is not a critical factor in this case because Dai
and Hancock made their in-court identifications based on their recollection of the event rather than
the photo-spread. See Rogers, 774 S.W.2d at 260. Accordingly, based on the totality of the
circumstances, we find that both Dai's and Hancock's in-court identifications of Appellant were
admissible because there was not a substantial likelihood of irreparable misidentification. Point
three is overruled.
          The following occurred during the prosecutor's argument at the guilt-innocence phase:
He's out stealing and robbing from other folks. He's not getting an education. He's not
working at a job. If he was a productive member of society, why didn't they call
somebody — 
[APPELLANT'S ATTORNEY]: Objection. She's commenting on [Appellant's]
failure to call evidence. We have no burden to produce evidence. And also on his failure
to testify.
THE COURT: I overrule the first objection. I instruct the jury to disregard the
last statement for any purpose whatsoever.
[APPELLANT'S ATTORNEY]: We ask for a mistrial declared, Your Honor.
THE COURT: Overrule the motion for mistrial.
[PROSECUTOR]: Why didn't he call any of the people he worked for? If he had
a job he could have called his employer.
Appellant complains in point four that this portion of the argument commented on his failure to
testify.
          Prosecutors are prohibited from commenting of a defendant's failure to testify. Tex. Code
Crim. Proc. Ann. art. 38.08 (Vernon 1979). However, they can comment on the defense's
failure to call witnesses to testify to facts which someone other than the defendant can relate. Hall
v. State, 619 S.W.2d 156, 159 (Tex. Crim. App. 1980). 
          Here, the prosecutor questioned "why didn't they call somebody." This comment was not
manifestly intended or of such a character that the jury would necessarily take it to be a comment
on Appellant's failure to testify. The comment was clearly directed at the failure of Appellant to
call witnesses to testify about his employment record, testimony which another witness could
provide. Accordingly, point four is overruled.
          The judgment is affirmed.
 
                                                                                 BOB L. THOMAS
                                                                                 Chief Justice

Before Chief Justice Thomas,
          Justice Cummings and 
          Justice Vance
Affirmed
Opinion delivered and filed June 6, 1991
Do not publish