IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-211-CR





JESSE M. RAMIREZ,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE




 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT



NO. 0106346, HONORABLE JON N. WISSER, JUDGE PRESIDING



 





 After finding appellant guilty of the offense of attempted murder, Tex. Penal Code
Ann. §§ 15.01 (West Supp. 1993) & 19.02 (West 1989), the jury assessed punishment, enhanced
by two prior felony convictions, at confinement for life. Appellant asserts two points of error. 
In his first point of error, appellant contends the evidence is insufficient to support the conviction
because there is a material variance between the indictment and the evidence adduced at trial
regarding the nature of the weapon used as a deadly weapon. In his remaining point of error,
appellant urges that the trial court erred in admitting an object purporting to be the weapon used
by appellant in that it differed significantly from the one allegedly used. We will overrule
appellant's points of error and affirm the judgment of the trial court.

 In the early morning hours of September 1, 1990, a brief fight occurred between
two men who were walking along St. Elmo Road in Austin and two men who had passed them
in a car moments earlier. The fight began as the result of words spoken by one of the occupants
of the vehicle that was answered by a "flipped finger" of one of the men walking along the road. 
Jason Lujan, one of the pedestrians, testified that five or ten minutes after the initial encounter,
the car reappeared and its occupants, identified as Mario Ugalde and appellant, stopped the
vehicle, got out and started fighting with Lujan and his companion, Anthony Scott. Lujan related
that appellant "opened the trunk [of the car] and he grabbed something out and he was swinging
it at Scott." Dr. David Jacoby, emergency room physician at Brackenridge Hospital, treated Scott
for a "severe brain injury" resulting from a "real high magnitude of force, very high velocity with
a hard, firm object." Dr. Jacoby stated that he gave Scott "less than five-percent" chance for
survival after his initial examination. Jimmy Scott, father of the victim, testified that as a result
of the beating, his son is only able to see out of one eye, cannot swallow, can only say a few
words, doesn't have the use of his left arm or leg, and is not able to use the commode by himself.

 The indictment alleged in pertinent part that appellant "with the specific intent to
commit the offense of murder, did then and there attempt to cause the death of an individual,
Anthony Scott, by hitting him on and about the face with a long metal object unknown to the
grand jury. . . ." Appellant's contention that there is a variance between the indictment and the
evidence is based on the alleged absence of testimony to show that the grand jurors exercised due
diligence in determining the exact object used in the offense. Specifically, appellant urges that
if the grand jury had interviewed Ugalde and Austin Police Officer Ernesto Pedraza, it would have
been able to conclude that the object described by the grand jury as "unknown" was actually a tire
jack similar to the one introduced by the State for demonstrative purposes. James Timberlake,
a member of the grand jury, testified that the grand jury was unable to "determine the exact nature
of the weapon that had been used as a deadly weapon."

 Appellant relies on cases that hold that the State has the burden of proof on "both
the issue of whether the object was unknown to the grand jury and whether reasonable diligence
was utilized to ascertain its nature." See, e.g., Washington v. State, 677 S.W.2d 142, 145 (Tex.
App.--Dallas 1984, no pet.). We hold that the State bears such burden only where the evidence
at trial shows what object was used to inflict the injury. The applicable law is set forth in Matson
v. State, 819 S.W.2d 839, 847 (Tex. Crim. App. 1991):



When an indictment alleges that the manner or means utilized to inflict an injury
is unknown and the evidence at trial does not show what type of object was used,
a prima facie showing exists that the object was unknown to the grand jury. If,
however, evidence at trial shows what object was used to inflict the injury, an issue
is raised with respect to whether the grand jury had information, when it handed
down the indictment, as to the object used. Only in such a case, must the State
prove that the grand jury did not know the manner or means of inflicting injury
and that the grand jury used due diligence in its attempts to ascertain the manner
or means.



(citations omitted). We must determine whether the evidence adduced in the trial court showed
what weapon was used to inflict the injuries to Scott.

 Lujan testified that appellant opened the trunk and grabbed "something long" that
looked "like a pipe or something like that." Appellant's companion and driver of the car on the
occasion in question, Mario Ugalde, stated that appellant "grabbed" something out of the trunk
that "looked like the [car] jack" the State introduced in evidence. Roel Silva, a sixteen-year-old
friend of Ugalde, testified that Ugalde told him that appellant hit somebody with a "crowbar" on
the occasion in question. Officer Pedraza testified that Lujan told him that when the car returned,
the "subjects in the car had jumped out again with some pipes or something similar to that and
attacked them."

 We find that it was not "conclusively established" in the trial court what the weapon
was. See Copeland v. State, 848 S.W.2d 199, 200 (Tex. App.--Corpus Christi 1992, pet. ref'd). 
We hold that the "unknown" allegation in the indictment was supported by the evidence. Thus,
the State was not required to show that the grand jury exercised due diligence in its attempts to
determine the weapon used in the offense. Appellant's first point of error is overruled.

 In his second point of error, appellant asserts that the probative value of the tire
jack offered by the State as being similar to the object used was substantially outweighed by the
unfair prejudice it created. Appellant contends that the tire jack introduced significantly differed
from the one used in that it had a "black base" attached which made it look more deadly than the
weapon used. "[T]he admissibility of a 'similar type' weapon or instrument used in the
commission of an offense is made upon the same basis as a decision is made on other types of
evidence, and this decision must rest largely in the discretion of the trial court." Simmons v.
State, 622 S.W.2d 111, 113 (Tex. Crim. App. 1981). A "similar type" weapon as the one used
in the commission of the crime may be admissible as demonstrative evidence if:



(1) the original is not available;


(2) if available, the original would be admissible;


(3) it is relevant and material to an issue in controversy;


(4) its probative value outweighs any inflammatory effect; and,


(5) the jury is instructed that the object is not the object used in the commission
of the crime, and is to be considered by the jury solely as evidence that
demonstrates or illustrates what the object used in the offense looks like.



Miskis v. State, 756 S.W.2d 350, 352 (Tex. App.--Houston [14th Dist.] 1988, pet. ref'd). It was
not shown that the weapon used in the instant case was available. Clearly, the original weapon
used in inflicting the injuries would have been relevant and admissible. Ugalde testified that the
car jack the State introduced as demonstrative evidence looked similar to that he saw in appellant's
hand except for the "black part" that "comes off." Appellant objected that Ugalde's testimony that
the heavy black part was not on the jack would not sufficiently dispel the prejudicial effect of the
evidence. Appellant further objected that there was no testimony about the size of the jack or its
configuration. The trial court's ruling on the admissibility of the exhibit, made in the presence
of the jury, was that it would be admitted for demonstrative purposes only, the trial court stating:



That means, as you heard, this is not the--the State does not contend this is the
actual device that you heard testified about. It is only a representative sample of
that type of device. And you also heard testimony that the black portion on that
is apparently not on the one that the witness has described.


With those limitations it will be admitted for demonstrative purposes only.



The trial court's ruling served to sufficiently advise the jury that the exhibit was not the device
used in the commission of the crime and that it was admitted only as being representative of the
object used. In addition, the court noted that the witness testified that the black portion was not
on the device used.

 The only remaining question is whether the probative value of the demonstrative
evidence outweighs any inflammatory effect. See Tex. R. Crim. Evid. 403. In light of the
evidence elicited from the witnesses relative to the description of the device used to inflict the
victim's injuries, and the court's ruling limiting the purpose for which the exhibit was admitted,
we find that the probative value of the evidence outweighed any inflammatory effect. We hold
that the trial court did not abuse its discretion in admitting the exhibit. Appellant's second point
of error is overruled.

 The judgment is affirmed.



 

 Tom G. Davis, Justice

Before Chief Justice Carroll, Justices B. A. Smith and Davis*

Affirmed

Filed: January 12, 1994

Do Not Publish








* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 74.003(b) (West 1988).