**Jimmy Earl BROWN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–92–00351–CR.**

Court of Appeals of Texas,
Tyler.

July 29, 1994.

Frank W. Henderson, Tyler, for appellant.

Amy Blalock, Asst. Dist. Atty., Tyler, for appellee.

BILL BASS, Justice.

A jury found Jimmy E. Brown guilty of the offense of delivery of a controlled substance and assessed his punishment at 45 years confinement. We will reverse and remand.

In his first point of error, Appellant maintains that the trial court committed reversible error by failing to find that the State used its strikes in a racially discriminatory manner when it struck panel member 18, Virgia Ford, and panel member 4, Joianessa Smith.

Appellant is African–American. Of the seven African–Americans on the panel, three were excused for cause, leaving panel members 4, 18, 22, and 33 within the strike zone. The State peremptorily challenged three of

the four remaining, leaving only one African–American to serve on the jury.

The prosecutor testified that he peremptorily challenged venireperson number 18, Virgia Ford, because she worked as a nurse and because she failed to reveal a relationship with someone who had a criminal history. Virgia Ford lives at the same address as a Stephen D. Ford, who had pled guilty to driving while intoxicated. When the prosecutor asked members of the panel if they were related to anyone who had been convicted of a criminal offense, Ford did not respond. During *voir dire*, the prosecutor did not question her regarding what her relationship was to Stephen Ford, and Appellant argues that the record therefore fails to establish the existence of a relationship. However, the State was justified in presuming a relationship between two persons with the same surname living at the same address. Relationship to a person who has been charged with or convicted of a crime is a race-neutral reason for the exercise of a peremptory challenge. *United States v. Yankton*, 986 F.2d 1225 (8th Cir.1993); *Hill v. State*, 827 S.W.2d 860 (Tex.Cr.App.1992). Failure to disclose information during *voir dire* has been held to be a sufficiently race-neutral reason to peremptorily challenge a potential juror. *Perry v. State*, 770 S.W.2d 950 (Tex.App.—Fort Worth 1989, no pet.); *Holman v. State*, 772 S.W.2d 530 (Tex.App.—Beaumont 1989, no pet.). The State struck all panel members who it believed had been charged or convicted of a crime.

Ford's status as a health care professional provides a much more tenuous basis for her exclusion. An explanation for a peremptory challenge based upon an occupational bias is extremely suspect unless the group trait is shown to apply to the challenged juror. *Whitsey v. State*, 796 S.W.2d 707, 716 (Tex.Cr.App.1989). However, Ford's probable relationship to a person convicted of a crime constitutes a sufficient reason for her exclusion from the jury.

The prosecutor explained that he struck panel member number 4, Joianessa Smith, because of her age and because she was a single mother. Smith was 20 years of age, the youngest member of the jury panel. The prosecutor stated that he struck all panel members, white or black, who were under 30 years of age because he did not think that they made "good" jurors in a drug case. Age may constitute a racially neutral reason for a peremptory challenge. *United States v. Jackson*, 914 F.2d 1050 (8th Cir.1990).

The trial judge's resolution of the *Batson*[1] question is reviewable by a "clearly erroneous" standard. *Tennard v. State*, 802 S.W.2d 678 (Tex.Cr.App.1990). We conclude that the trial judge's decision was not clearly erroneous. Appellant's first point of error is overruled.

In his second point, Appellant asserts that the trial court committed reversible error by failing to find that the State used its peremptory challenge of panel member number 4, Joianessa Smith, in a discriminatory manner when it peremptorily excluded her from jury service because of her age. The prosecutor testified that it was the policy of the District Attorney's officer to strike younger potential jurors, the application of the policy depending on the number of available challenges remaining. Appellant argues that he was 16 years older than Smith, and that the prosecutor did not show any relationship between a potential juror's youth and her ability to serve as an unbiased juror in Appellant's case. Appellant insists that a person's age is generally as unrelated to fitness for jury service as their race or gender, and that the systematic exclusion of young people is a violation of their right to equal protection under the Fourteenth Amendment to the UNITED STATES CONSTITUTION and Article I, Section 19 of the CONSTITUTION OF THE STATE OF TEXAS.

Appellant concedes that the Texas cases hold that age can be a race-neutral reason justifying the use of a peremptory challenge by the State. *Silva v. State*, 800 S.W.2d 912 (Tex.App.—San Antonio 1990, no pet.); *Moss v. State*, 790 S.W.2d 731 (Tex.App.—Houston [14th Dist.] 1990, no pet.). But Appellant's complaint is based upon the denial of Smith's right to equal protection. However, we know

---

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

of no precedent for the proposition that the peremptory challenge of a potential juror because of age constitutes a denial of his or her right to equal protection under the state or federal constitutions. Appellant's second point is overruled.

In his third point, Appellant contends that the trial court erred in failing to sustain his challenge for cause of panel member 13, Ms. Stagner, "because she was unable to follow the law and could not give full effect to Appellant's Fifth Amendment right against self-incrimination." Counsel for Appellant challenged Ms. Stagner for cause, used a peremptory strike against her, requested an additional peremptory strike which was denied by the court, and as a consequence panel member number 11, Ernest Schrickling, who was objectionable to the defense, was seated as a juror.

The decision to excuse a prospective juror is left to the discretion of the trial judge because the trial judge is in the best position to observe the demeanor and voice inflections of the prospective juror. *Pierce v. State,* 777 S.W.2d 399 (Tex.Cr.App.1989), *cert. denied,* 496 U.S. 912, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990). The trial judge's decision should not be reversed on appeal absent a showing of abuse of discretion after examining all the answers of the venireperson. *Sawyers v. State,* 724 S.W.2d 24 (Tex.Cr.App. 1986), *overruled on other grounds, Watson v. State,* 762 S.W.2d 591 (Tex.Cr.App.1988).

The complete interrogation of Ms. Stagner by the defense counsel and the judge is set out verbatim. First, during the examination of the entire panel by Appellant's attorney, the following exchange took place:

Q: [By Mr. Henderson/Defense Counsel] Does anybody feel if Mr. Brown doesn't testify that he must have something to hide? Does anybody feel like that? I know you do, Mr. Nixon.

A: [Ms. Stagner] I do.

Q: And you're Ms. Stagner; is that correct?

A: Yes.

Q: You feel that way?

A: Yes.

Q: And, again, I was a prosecutor for eight years—

A: Well, I just feel that that's just my personal opinion.

Q: Okay.

A: I just feel that if they're going to be given the opportunity to defend themselves, that if they can they should. That's just my opinion.

Q: So you can't give him his Fifth—

A: I'm not sure I could.

Q: Well, again, when you say, "I'm not sure"—

A: I understand what you're saying, but I want you to realize what I'm saying too, that at this point I'm not sure that I could do that.

Q: In other words, you would expect—if you were in Mr. Brown's situation, you would want to testify and tell your side of the story; is that right?

A: That's correct. That's just the way I feel about it.

Q: I know my mother feels the same way about it, and I probably wouldn't have her on a jury. But the fact that you feel that way that if it were you that would testify, do you think that—I mean, only you can tell me whether—

A: I thought I did.

Q: What I'm getting at—when you say, "it's possible," or "maybe," or, "I think I might," that—I really need a yes or no answer if you can do it. Like I said, if we can assume you onto the jury and you're there, are you telling me and telling Mr. Brown that if he doesn't testify you're going to assume that he has something to hide—

A: That's correct.

Later, the trial judge and defense counsel questioned Ms. Stagner at the bench.

THE COURT: Ms. Stagner, the Court would simply like to inquire if the Court instructs you of the Defendant's right not to testify and if you are instructed and in the event that the Defendant fails to testify, you cannot and must not con-

sider that for any purpose as evidence against him.

MS. STAGNER: Yes, that's what I thought. I can take instructions, but he asked me how I felt and that's how I responded.

THE COURT: I understand. I'm just saying could you follow the Court's instructions if you were so instructed by the Court that you could not consider that for any purpose or evidence of guilt?

MS. STAGNER: Well, you're telling me I would have to.

THE COURT: Yes, ma'am, but—

MS. STAGNER: So I would say if I have to, I will. But he asked me how I felt about it and that's how I responded.

THE COURT: Yes, ma'am. That's fine. Thank you, ma'am.

MR. HENDERSON: Can I just ask her one question about that?

THE COURT: If it's strictly a definition of the law and whether or not she could follow it.

MR. HENDERSON: That's it, Judge. My question is, though, knowing how she feels about it and being able to follow the instruction, you can't—

MS. STAGNER: I would hope that I'm open-minded enough to follow instructions.

MR. HENDERSON: I understand, Ms. Stagner, and I'm not trying to argue with you. My question is because of the way you feel, and that's just something everybody brings into the courtroom, the way they feel, do you think that that would affect your ability to follow that instruction in this case? If the judge instructs you to disregard, you can't use the Defendant's failure to testify against him, do you feel that you would do that even though you're instructed not to because you feel that way? I mean, I just know—

MS. STAGNER: I'm not sure I can answer that right now.

MR. HENDERSON: That's what—

MS. STAGNER: I understand what you're saying, but you're asking me how I feel and—

MR. HENDERSON: My question is: How do you feel—with that instruction in mind, can you follow that instruction?

MS. STAGNER: I would hope that I can, but that's all I can say. I'm sorry I can't give you a yes or a no.

MR. HENDERSON: Okay. Knowing that, you know, Mr. Brown needs to—has to rely on these answers that you give here—

MS. STAGNER: I understand.

MR. HENDERSON: —you're saying you can't give a yes or no answer to that question?

MS. STAGNER: I would try my best.

Ms. Stagner candidly acknowledged her belief that the accused should and would testify unless he were guilty. She told the judge that if he instructed her that she could not consider the defendant's failure to testify she would have to follow his instructions. Finally, she said she "would hope that I can, but that's all I can say." Although she naturally refused to tell the judge she would not follow his instructions, a review of her entire examination leaves little doubt that, if chosen to serve on the jury, she would have expected Appellant to testify unless he were guilty.

The privilege against self-incrimination is not a recently recognized right of a defendant discovered in the penumbra of the Constitution. Its origin is more ancient than this Republic, and with jury trial and the privilege against double jeopardy, it has always been one of the core guarantees of the fundamental fairness of our system. No juror should be seated who harbors such deeply felt doubts about his or her ability to accord an accused the privilege against self-incrimination. Ms. Stagner's last word on the subject was that she could only hope to follow the judge's instructions regarding an accused's failure to testify.

The State argues that Ms. Stagner distinguished between the way she personally felt and her ability to follow the court's instructions. However, after reviewing the entirety of Ms. Stagner's *voir dire* examination, we

conclude that she had a bias or prejudice against a law applicable to the case upon which Appellant was entitled to rely, and that the trial court abused its discretion in denying Appellant's challenge for cause. TEX. CODE CRIM.PROC.ANN. § 35.16(c)(2) (Vernon 1989). Appellant's third point is *sustained.*

■ In his fourth point, Appellant contends that "the trial court erred by overruling [his] objection to the State's improper opening statement concerning an alleged extraneous offense." The prosecutor stated during his opening remarks to the jury that "when Jimmy Earl Brown walked up on him [Detective Van Ness] he said, 'I know you. You were at Gwayland's when he got busted. You're a cop.'" There was not testimony during the trial that Appellant had been arrested at another location. Detective Van Ness testified only that Appellant had seen him before at another location, not that Appellant had been arrested.

■ The prosecutor's statements do not indicate that an extraneous offense was committed by Appellant. In order to be objectionable, the evidence or reference to an extraneous offense must show prior criminal conduct by the accused. *McKay v. State,* 707 S.W.2d 23, 31–32 (Tex.Cr.App.1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164; *Harris v. State,* 738 S.W.2d 207, 224 (Tex.Cr.App.1986), *cert. denied,* 484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987). The trial court did not err in overruling Appellant's objection. Appellant's fourth point is overruled.

■ In his fifth point of error, Appellant maintains that "[t]he trial court erred when it overruled Appellant's objection to the improper argument by the State in closing which shifted the burden of proof and the production of evidence to Appellant." During closing arguments, the prosecutor told the jury, "You don't have any evidence that it was anybody but Jimmy Earl Brown." The prosecutor may comment in argument upon the failure of a defendant to call competent and material witnesses, when it is shown that such witnesses were available to testify on behalf of the defendant, but were not called by the defendant to testify. *Garrett v. State,*

632 S.W.2d 350 (Tex.Cr.App.1982). Appellant argues that since no such witnesses were shown to be available, the comment was improper. An argument will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, it violates a statute, or it injects new facts, harmful to the accused, into the trial. *Todd v. State,* 598 S.W.2d 286, 296–97 (Tex.Cr.App.1980).

The State argues that when the prosecutor's argument is viewed in its entirety and in the context of the trial, it appears that the prosecutor was not attempting to shift the burden of proof, but was explaining how the Appellant was correctly identified by Detective Van Ness as the perpetrator of the offense.

■ It is always impermissible for a prosecuting attorney to ask jurors to speculate on the law, the facts of the case, or hypothetical defenses a defendant could have presented. *Garrett,* 632 S.W.2d at 351. Although the prosecutor's comment in this case approaches an impermissible allusion to Appellant's failure to present evidence, viewed in the context of the case, we conclude that the trial judge did not err in overruling Appellant's objection. The fifth point is overruled.

■ By his sixth point of error, Appellant complains that the trial court erred in overruling his objection to that part of the State's argument which injected facts outside the record into the trial. The prosecutor argued that "A first time drug dealer can get life. We don't have a first time drug dealer."

■ Contrary to Appellant's assertion, however, the trial judge sustained Appellant's objection and instructed the jury to disregard the statement. The statement clearly assumed the commission of an extraneous offense not in evidence, a prior conviction for drug delivery. An argument is manifestly improper when it assumes a previous conviction of a prior offense, and such a comment is particularly damaging when the jury may infer from it that the defendant has already been convicted of a similar offense. Unless an argument is so prejudicial that an instruction to disregard could not have re-

moved its ill effects from the minds of the jurors, reversal should not result. *Nichols v. State,* 754 S.W.2d 185, 200 (Tex.Cr.App.1988), *cert. denied,* 488 U.S. 1019, 109 S.Ct. 819, 102 L.Ed.2d 808 (1989) (*overruled on other grounds in Butler v. State,* 830 S.W.2d 125 (1992)). Although it is a close question, we conclude the instruction by the trial judge cured any error.

 Later in his argument, the prosecutor stated, "But what you've got here is … you don't have a possession case. He's not a user. He's a distributor." Appellant's objection was overruled. This argument by the prosecutor was a reasonable deduction from the evidence, and the trial court did not err in overruling Appellant's objection. Appellant's sixth point is overruled.

■ Appellant maintains in his seventh point that the evidence is insufficient to show that he knew that the substance he delivered was cocaine.

The record shows that the delivery was made to Detective Van Ness at Appellant's dinner table in his apartment. Appellant poured some rocks of crack cocaine on the table and pushed them toward Van Ness. When Van Ness complained that he thought the rocks were too small, Appellant gave him a chip of a rock. Officer Van Ness gave Appellant $40.00, the going rate for two rocks of crack cocaine. Officer Van Ness told Appellant that he like to transport crack in a glass of ice in case he was stopped by the police because crack cocaine is not water soluble, and the police might not think to look into the glass. Viewed in the light most favorable to the verdict, there is ample evidence that Appellant knew that the substance he delivered to Van Ness was crack cocaine. The point is overruled.

Because of the trial court's error in denying Appellant's challenge of Ms. Stagner for cause, the judgment is reversed and the cause is remanded to the trial court.

RAMEY, Chief Justice, dissenting.

I respectfully dissent. Though not without equivocation venireperson Stagner answered several inquiries that if selected as a juror she would yield to the trial court's instruc-tions not to consider Brown's failure to testify as evidence against him. I would not reverse the case because of the trial court's failure to excuse Stagner.