

# NUMBER 13-19-00480-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

FORD MOTOR COMPANY,                                           **Appellant,**

**v.**

MARIA CRUZ LOPEZ, INDIVIDUALLY
AND AS REPRESENTATIVE OF DAVID
TORRES CRUZ, AN INCAPACITATED ADULT           **Appellee.**

## On appeal from the 357th District Court
## of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Justices Longoria, Hinojosa, and Tijerina**
**Memorandum Opinion by Justice Hinojosa**

Appellant Ford Motor Company (Ford) appeals the trial court's order denying its special appearance. Appellee Maria Cruz Lopez, individually and as representative of David Torres Cruz, an incapacitated adult, sued Ford alleging various causes of action after Lopez and Cruz were injured in an accident while driving a 2009 Ford Escape. In

one issue, Ford argues the trial court erred in denying its special appearance because Lopez's suit does not arise out of or relate to Ford's contacts with Texas as necessary to establish specific personal jurisdiction. We affirm.

## I.  BACKGROUND

Lopez was driving a 2009 Ford Escape in Brownsville, Texas, with her son Cruz as a passenger when another vehicle entered Lopez's lane and collided with her vehicle. Both Lopez and Cruz suffered injuries from the collision. The accident rendered Cruz permanently incapacitated. Lopez sued Ford in Texas alleging theories of negligence, breach of warranty, strict product liability, as well as design, manufacturing, and marketing defects. Specifically, Lopez claimed that Ford's rear seat restraint design resulted in injuries to herself and Cruz.

Ford filed a special appearance, arguing that it was not subject to general personal jurisdiction in Texas because it is incorporated in Delaware and headquartered in Michigan. Ford further argued that it was not subject to specific personal jurisdiction in Texas because the vehicle at issue was designed, manufactured, and sold by Ford outside of Texas, and thus Lopez's claims did not arise out of Ford's contacts with the forum. Ford attached evidence establishing that the vehicle at issue was designed in Michigan, assembled in Missouri, and originally sold in Mexico. Ford maintained that the only connection between Lopez's claims and Texas was Lopez's decision to drive the vehicle to Texas.

After conducting jurisdictional discovery, Lopez filed a response to Ford's special appearance. Lopez argued that the trial court had specific jurisdiction over Ford because

2

it placed the 2009 Ford Escape in the stream of commerce while also specifically targeting Texas as a market for the Escape and other products. Lopez argued that it was legally insignificant that this particular Escape was sold outside of Texas.

The jurisdictional record established that Ford: (1) designed, manufactured, and marketed the vehicle at issue; (2) has sales/service centers, distributors, and authorized dealers throughout Texas; (3) employs people in Texas to perform sales, service, and parts-distribution functions; (4) has sold 9,574 2009 Ford Escapes in Texas; and (5) advertises and markets Ford vehicles generally in Texas.

Following a hearing, the trial court signed an order overruling Ford's special appearance. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7).

After the parties filed their appellate briefs, the United States Supreme Court issued its decision in *Ford Motor Co. v. Montana Eighth Judicial District Court*, __ U.S. __, 141 S. Ct. 1017, 209 L.Ed.2d 225 (2021), which addressed whether Ford was subject to specific jurisdiction in the states of Montana and Minnesota on similar facts. The parties have filed letter briefs with the Court addressing the impact of this decision.

## II.     STANDARD OF REVIEW

"A court must have both subject matter jurisdiction over a case and personal jurisdiction over the parties to issue a binding judgment." *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 7–8 (Tex. 2021); *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010). Personal jurisdiction involves a court's ability to bind a particular party to that judgment. *Luciano*, 625 S.W.3d at 8; *CSR Ltd. v. Link*, 925 S.W.2d

3

591, 594 (Tex. 1996). A special appearance allows a nonresident to appear in a Texas court for the limited purpose of challenging the court's exercise of personal jurisdiction. *See* TEX. R. CIV. P. 120a(1).

Whether a trial court has personal jurisdiction over a party is a legal issue which we review de novo. *Luciano*, 625 S.W.3d at 8; *Spir Star*, 310 S.W.3d at 871; *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). In resolving this legal question, the trial court may be required to decide questions of fact. *Luciano*, 625 S.W.3d at 8; *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). "When, as here, the trial court does not issue findings of fact and conclusions of law with its judgment, we presume all factual disputes were resolved in favor of the trial court's decision unless they are challenged on appeal." *Luciano*, 625 S.W.3d at 8; *see Coleman*, 83 S.W.3d at 806.

### III.    PERSONAL JURISDICTION

"Texas courts may assert personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction and (2) the exercise of jurisdiction is consistent with federal due-process guarantees." *Luciano*, 625 S.W.3d at 8 (citing *TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 (Tex. 2016)); *see* U.S. CONST. amend. XIV, § 1. The Texas long-arm statute permits jurisdiction over a nonresident doing "business in this state" if the nonresident "commits a tort in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(2). With respect to federal due process protections, "a tribunal's authority depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system

4

of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co.*, 141 S. Ct. at 1024 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)).

"A defendant's contacts with the forum can give rise to either general or specific jurisdiction." *Id*. A Texas court may exercise general jurisdiction only when a non-resident defendant is "essentially at home" in the State. *Id*. A corporation is "at home" where it is incorporated or where it has its principal place of business. *Id*. General jurisdiction extends to any and all claims brought against a defendant, even if they do not relate to the forum state or the defendant's activity in that state. *Id*. The parties agree that Texas courts do not have general jurisdiction over Ford because it is headquartered and incorporated outside of Texas.

The minimum contacts necessary for specific jurisdiction are established if (1) the defendant purposefully avails itself of the privilege of conducting activities in the forum state, and (2) the suit arises out of or relates to the defendant's contacts with the forum. *Luciano*, 625 S.W.3d at 8–9; *see Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, ___ U.S.___, __, 137 S. Ct. 1773, 1780 (2017). In the context of product liability cases, Texas courts employ the stream-of-commerce doctrine to determine purposeful availment. *Luciano*, 625 S.W.3d at 9. In essence, that doctrine provides that a seller's awareness that the stream of commerce will bring its product into the forum state does not amount to purposeful availment absent additional conduct evincing an intent or purpose to serve the market in the forum state. *Id*. Such conduct may include advertising, soliciting business through salespersons, or using a distribution system that brings the product into

5

the forum state. *Id*. Ford concedes that it has purposefully availed itself of Texas, but it maintains that Lopez's claims do not arise out of or relate to its contacts with the State.

The "arises from or relates to" element of specific jurisdiction requires a nexus between the nonresident defendant, the litigation, and the forum state. *Id*. at 14. The Texas Supreme Court has held that this "relatedness" requirement is satisfied by a substantial connection between the nonresident defendant's contacts and the operative facts of the litigation. *Id*. In its initial brief, Ford contended that Lopez's claims did not meet the relatedness requirement because the vehicle at issue was designed, manufactured, and sold outside of Texas. Since Ford filed that brief, the United States Supreme Court squarely rejected many of Ford's arguments in *Ford Motor Co.*, holding that the plaintiffs' claims related to Ford's contacts with the forum states, despite the vehicles not having been designed, manufactured, or sold in those states. 141 S. Ct. at 1032. In *Luciano*, the Texas Supreme Court summarized *Ford Motor Co.* as follows:

> Ford argued that a state court would have jurisdiction only if the company's conduct in the state "gave rise to" the plaintiff's claims, a causal link that exists only if the company designs, manufactures, or sells the particular vehicle involved in an accident in the forum state. *Id*. at 1023, 1026. The place of accident or injury becomes immaterial. *See id*. at 1023.
>
> The Supreme Court rejected that argument, holding that "when a company like Ford serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit." *Id*. at 1022. A "causation-only approach finds no support in [the] Court's requirement of a 'connection' between a plaintiff's suit and a defendant's activities." *Id*. at 1026 (citing *Bristol-Myers*, 137 S. Ct. at 1776). Instead, due process demands that a suit "arise out of or relate to" the defendant's contacts with the forum. *Id*. (quoting *Bristol-Myers*, 137 S. Ct. at 1780). The first half of that standard, the Court said, "asks about causation." *Id*. The latter half "contemplates that some relationships will support jurisdiction without a causal showing." *Id*. "That does not mean anything goes," the Court warned, because "'relate to' incorporates real

6

limits" to adequately protect nonresident defendants. *Id*.

> The Court equated *Ford Motor Co.* to *World-Wide Volkswagen* [*Corp. v. Woodson*]—what it described as the "paradigm case" for specific jurisdiction. [444 U.S. 286, 297–298 (1980)]. In *World-Wide Volkswagen*, the *Ford* Court observed, both Audi—the manufacturer—and Volkswagen—the nationwide importer—were subject to specific jurisdiction in Oklahoma because their business "deliberately extended into [that state]." *Id*. at 1027. The forum state could thus hold the companies accountable for injuries "even though the vehicle had been designed and made overseas and sold in New York." *Id*.

625 S.W.3d at 15.

It is plainly clear, and Ford concedes, that the facts of this case are almost identical to those in *Ford Motor Co.* Ford notes one distinguishing factor though—Lopez and Cruz are not residents of Texas. Focusing on this distinction, Ford maintains that *Ford Motor Co.* should be read as requiring the presence of each of three factors before a forum may exercise specific jurisdiction over it: (1) a resident plaintiff; (2) a global car company, extensively serving the state; and (3) an in-state accident. Ford argues:

> Like it does in Montana and Minnesota, Ford seeks to serve the Texas market. It has the same extensive contacts here as it does in Montana and Minnesota. There is no dispute that the accident in this case occurred in Texas. Two of the requirements are met, but not the third. What role does the plaintiff's residency play in the proper exercise of specific jurisdiction? No doubt the plaintiff here will argue, "none." If the plaintiff here were a Texas resident, this Court could exercise specific jurisdiction, and Ford would have at this juncture conceded as much, as it has in other cases that match the fact pattern in [*Ford Motor Co.*] But these facts are different. The question is whether it matters. It does.

Ford maintains that the residence of the plaintiff now matters, while conceding that this factor has previously had limited relevance to the personal jurisdiction analysis. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts

7

between the plaintiff (or third parties) and the forum State."). In reconciling the United States Supreme Court's jurisprudence on this issue, we read *Ford Motor Co.'s* reference to a resident plaintiff not as a requirement for the exercise of personal jurisdiction but as a relevant factor insofar as it connects the injury to the forum state. *See Ford Motor Co.*, 141 S. Ct. at 1031–32 (explaining that "the place of a plaintiff's *injury* and residence . . . still *may be relevant* in assessing the link between the defendant's forum contacts and the plaintiff's suit—including its assertions of who was injured where") (emphasis added). The Texas Supreme Court has recently interpreted *Ford Motor Co.* in a similar manner, emphasizing the occurrence of injury in the State:

> While "plaintiff's residence in the forum State is not a separate requirement" for specific jurisdiction and "lack of residence will not defeat jurisdiction established on the basis of defendant's contacts," *Keeton*, 465 U.S. at 780, 104 S.Ct. 1473, *that the lawsuit arises from an injury which occurred in the forum state* is a relevant part of the relatedness prong of the analysis, *Ford Motor Co.*, 141 S. Ct. at 1028 ("Each plaintiff's suit, of course, arises from a car accident in one of those States."); *cf. Bristol-Myers*, 137 S. Ct. at 1782 (holding that the connection between the nonresidents' claims and the forum was weak because the "relevant plaintiffs are not California residents and do not claim to have suffered harm in that State").

*Luciano*, 625 S.W.3d at 16–17 (emphasis added). This reading is reinforced by Justice Alito's concurring opinion in *Ford Motor Co.*:

> [W]e merely follow what we said in [*World-Wide Volkswagen* 444 U.S. at 297–298], which was essentially this: If a car manufacturer makes substantial efforts to sell vehicles in States A and B (and other States), and a defect in a vehicle first sold in State A causes injuries in an accident in State B, the manufacturer can be sued in State B. That rule decides these cases.

141 S. Ct. at 209 (Alito, J., concurring). Notably, *World-Wide Volkswagen*, which the *Ford Motor Co.* majority and concurring opinions extensively rely on, involved New York

8

residents injured in Oklahoma.[1] *See* 444 U.S. at 288.

We conclude that the non-residence status of the plaintiffs in this case does not preclude Texas from exercising jurisdiction over Ford. Rather, we look to the relation between Ford's contacts with Texas and the plaintiffs' claims. Here, Ford "served a market" in Texas "for the very vehicle[] that the plaintiffs allege malfunctioned and injured them" in Texas. *Ford Motor Co.*, 141 S. Ct. at 1028. "[T]here is a strong 'relationship among the defendant, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction." *Id*. (quoting *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 (1984)); *see Luciano*, 625 S.W.3d at 17 ("It is sufficient that SprayFoam intended to serve a Texas market for the insulation that the Lucianos allege injured them in this lawsuit."). Accordingly, we hold that the trial court properly determined that it had personal jurisdiction over Ford in this case. *See Luciano*, 625 S.W.3d at 8; *Spir Star*, 310 S.W.3d at 871. We overrule Ford's sole issue.

## IV. CONCLUSION

We affirm the trial court's order denying Ford's special appearance.

LETICIA HINOJOSA
Justice

Delivered and filed on the
31st day of August, 2021.

---

[1] The United States Supreme Court held that a nonresident automobile retailer and its wholesaler did not have sufficient contacts to Oklahoma for that State to exercise personal jurisdiction. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980). However, the Court noted that the same would not be true for the manufacturer and nationwide importer of the vehicle, which targeted Oklahoma for the sale of its goods. *Id*. at 297–98 ("The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.").