**Arthur Lee HOLMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 09–88–305 CR.

Court of Appeals of Texas,
Beaumont.

May 24, 1989.

 

William G. Martin, Jr., Beaumont, for appellant.

Tom Maness, John R. DeWitt, Beaumont, for appellee.

## OPINION

BURGESS, Justice.

A jury found appellant guilty of aggravated sexual assault. The jury found the enhancement count of the indictment to be true and assessed punishment at life imprisonment.

In his first point of error appellant urges the trial court abused its discretion in overruling his motion for change of venue, because of bias and prejudice existing in Jefferson County due to excessive and negative pre-trial publicity. Appellant's motion was accompanied by his affidavit and the affidavits of two residents of Jefferson County, pursuant to *TEX.CODE CRIM. PROC.ANN. art. 31.03* (Vernon Supp. 1989). The State filed a controverting affidavit as provided under *TEX.CODE CRIM. PROC.ANN. art. 31.04* (Vernon 1966). At the hearing on the motion, appellant produced two witnesses who testified they had seen publicity regarding the case in newspapers and on television, one of whom had talked to people in the community, and they were of the opinion that appellant would be unable to obtain a fair trial in Jefferson County. Appellant also introduced 18 newspaper articles concerning or arising from this case which were published in the Beaumont Enterprise.

The first article was published on May 11, 1988, one day after the complainant, a State parole officer, reported to police that appellant had sexually assaulted her. Appellant was one of the parolees assigned to the complainant's case load at the time the offense occurred. The last article was published on August 10, 1988. Only a handful of the articles mentioned appellant by name, but many of them did tend to convey an impression that a rape in fact occurred. However, within a few weeks the major focus of the articles shifted from the occur-

rence of the alleged offense to the issue of whether state laws should be changed to allow parole officers to carry firearms while on duty. There was no evidence that there was any publicity related to this case from August 10, 1988, until November 14, 1988, the date of the hearing. Although television coverage of the case was mentioned by the witnesses, they did not state when they saw such coverage or relate any details of such coverage, except the statement by one of the witnesses that he had never seen appellant's face on television.

The State introduced a witness who testified that he heard accounts of the case through various media, but that appellant would nonetheless be able to obtain a fair and impartial trial in Jefferson County. The State's witness also testified that approximately one year before the hearing there were approximately 125,000 qualified jurors in Jefferson County. The total circulation of the Beaumont Enterprise was shown to be approximately 70,000 in Jefferson and surrounding counties. The trial court denied the motion to transfer venue based on this evidence, but stated that he would consider the motion as ongoing during voir dire. The trial court stated that upon a showing of prejudice during voir dire, he would grant appellant's motion.

During voir dire both sides questioned the jury panel concerning pre-trial publicity and any prejudicial effect it might have on the panel members' minds. Almost everyone on the panel had heard some pre-trial publicity concerning the case, however, there was no indication of prejudice among panel members against appellant. Appellant reurged the motion to transfer venue at the end of voir dire and the trial court denied the motion.

■ In deciding whether to grant a motion to transfer venue, the trial court must determine whether outside influences affecting the community's climate of opinion as to a defendant are inherently suspect. *Phillips v. State,* 701 S.W.2d 875, 879 (Tex.Crim.App.1985), *cert. denied,* 477 U.S. 909, 106 S.Ct. 3285, 91 L.Ed.2d 574 (1986); *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).

When, as in this case, the trial court is presented with conflicting evidence, its decision will only be overturned upon a showing of abuse of discretion. *Eckert v. State,* 623 S.W.2d 359, 363 (Tex.Crim.App.1981).

■ After reviewing the record, we find appellant has not met his burden of proving such prejudice in the community that the likelihood of obtaining a fair and impartial jury was doubtful. Absent such a showing, no abuse of discretion occurs. *Nethery v. State,* 692 S.W.2d 686, 694 (Tex. Crim.App.1985) *cert. denied,* 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986). Appellant points to the fact that almost every panel member had heard, read, or seen media reports related to this case. The standard, however, does not require that jurors be totally ignorant of the facts and issues. Rather the publicity must be pervasive, prejudicial, and inflammatory. *Phillips,* 701 S.W.2d at 879. We cannot say the trial court abused its discretion in resolving these issues against appellant. Appellant's first point of error is overruled.

■ By his second point of error appellant complains that the trial court erred in seating the jury after the State exercised its peremptory strikes in a racially discriminatory manner. Appellant was a black man and the State used eight of its ten strikes to exclude black male veniremen. Four black persons ultimately served on the jury. After the parties had exercised their peremptory strikes, but before the jury was seated and sworn, the trial court convened a hearing wherein he required the prosecutor to explain why he struck the black panel members, in accordance with *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Since the record contains the prosecutor's explanation of the reasons for his strikes we are not called upon to address whether appellant established a prima facie case of deliberate discriminatory exercise of peremptory strikes, but rather we will only address whether the trial court abused its discretion in finding that the prosecutor did not improperly exercise racial discrimination in striking black panel members. *United States v. Forbes,* 816 F.2d 1006 (5th Cir.

1987). Appellant points out in his brief that at this point in a "Batson" hearing, the State has the burden of proving that it exercised its peremptory strikes for racially neutral reasons. *See Batson, supra,* 476 U.S. at 100, 106 S.Ct. at 1725. The trial court then must determine whether, despite any racially neutral reasons given by the State the defendant has established purposeful discrimination. *Id.* By judging the credibility of the prosecutor, the content of his explanation, and all surrounding facts and circumstances, the trial judge must determine, as a matter of fact, whether purposeful discrimination was used. This finding must be given great deference by a reviewing court.

▇▇▇ Appellant complains that the State cannot be allowed to explain away its strikes of black venireman on grounds such as lack of eye contact with a venireman, or lack of rapport between the venireman and the prosecutor during voir dire. Appellant cites no authority for such position. The record reveals that in only one instance did such lack of eye contact or rapport constitute the main or central reason given by the prosecutor for exercising a peremptory strike on a black venireman. Even in that instance the prosecutor also stated that this venireman exhibited vacillation and bias against the State. The prosecutor's reasons for exercising the other strikes he made on black veniremen included failure of the veniremen to candidly reveal their own prior criminal histories or that of their relatives, the fact that one venireman worked at the same place appellant had been employed, and that one venireman had seemed to be asleep during voir dire. The element of lack of rapport entered into the prosecutor's decision to strike a white venireman as well.

Appellant made no attempt to cross-examine the prosecutor as to his reasons for striking black veniremen and offered no argument or evidence to the trial court to show why such reasons should not be accepted as genuine. We find that the prosecutor gave racially neutral explanations for every strike he exercised. The trial judge was present in the court and had the opportunity to observe the venire during voir dire. The trial court is, therefore, far better able than we are to determine whether the prosecutor actually struck the black veniremen due to racially neutral motivations. We find no abuse of discretion. Appellant's second point of error is overruled.

▇▇▇ By his third point of error appellant urges the trial court committed reversible error in not granting his motion for mistrial when the prosecutor repeatedly attempted to get into evidence the extraneous offense of use and possession of cocaine by appellant in violation of Rule 404(b) of the Texas Rules of Criminal Evidence. The record reveals that twice during his cross-examination of appellant in the guilt phase the prosecutor asked appellant whether he had used cocaine. Once the question was whether appellant had begun to use cocaine after his release from prison on parole. The second time the prosecutor asked the appellant whether he had used cocaine during the two days immediately preceding the occurrence of the sexual assault. In both instances appellant's objection was sustained and the jury was instructed to disregard the question. In neither instance did appellant answer the question. Therefore, no actual evidence of an extraneous offense was admitted. The prosecutor had previously asked appellant whether the terms of his parole had required him to attend meetings of Narcotics Anonymous. Without objection, appellant answered in the affirmative.

We find that the questions of the prosecutor were not clearly calculated to inflame the minds of the jurors and were not of such a character as to suggest the impossibility of withdrawing any impression that may have been produced in the minds of the jurors. *See Gardner v. State,* 730 S.W.2d 675, 696 (Tex.Crim.App.1987). Therefore, we must presume that any harm caused by such questions was cured by the trial court's instruction to the jury to disregard them. Furthermore, the prosecutor called a rebuttal witness who was allowed to testify without objection that appellant told him that he had used cocaine on the two days immediately preceding the day

**534**

the sexual assault was alleged to have occurred. Therefore, appellant waived his objection to the questions of which he now complains. *See Mitchell v. State*, 455 S.W.2d 266 (Tex.Crim.App.1970). Appellant's third point of error is overruled. The judgment of the trial court is affirmed.

AFFIRMED.