Jesse COPELAND, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–92–159–CR.

Court of Appeals of Texas,
Corpus Christi.

Dec. 17, 1992.

Discretionary Review Refused
May 19, 1993.

Kaye Berkey Ellis, Inmate Legal Services, Huntsville, for appellant.

Herbert B. Hancock, Asst. Dist. Atty., V.M. "Tuck" Tucker, Sp. Prosecution Unit, Huntsville, for State.

Before NYE, C.J., and GILBERTO HINOJOSA, and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

NYE, Chief Justice.

Jesse Copeland was convicted by a jury of aggravated assault on a Correctional Officer. Appellant pleaded true to enhancement allegations. The court assessed punishment at twenty-five years in prison. By two points of error, appellant complains of a fatal variance between the indictment and proof and of *Batson* error. We affirm the trial court's judgment.

Appellant is an inmate in the Texas Department of Criminal Justice, Institutional Division, in the Wynne Prison Unit. Armondo Valverde, a correctional officer, was assisting another officer, Gerald Spears, in collecting meal trays from the inmates. When Valverde approached appellant's cell to close the tray slot, appellant threw something at him. The substance was liquid. It passed between the bars, through the cell's mesh screen, and struck Valverde in his face, chest, arms, and stomach. Valverde suffered severe pain and stinging in his eyes which did not go away for almost two days.

At trial, the State peremptorily struck two black venirepersons. Appellant is black. Upon appellant's request, the court conducted a *Batson* hearing. The judge determined that the State struck the potential jurors for race neutral reasons.

By point one, appellant claims that the evidence that he threw an "unknown liquid substance" was insufficient to support either the indictment or the verdict. Appellant contends that the State was required to put in the indictment those characteristics of the substance which are susceptible to direct proof, and that its failure to do so deprived him of notice. He further claims that the State was required to prove that the grand jurors exercised reasonable diligence in attempting to ascertain the nature of the substance, that the inconsistent testimony fails to prove beyond a reasonable doubt that the substance was unknown, and that no reasonable juror could have found the substance unknown when its qualities were repeatedly emphasized.

When an indictment alleges that the manner or means utilized to inflict an injury is unknown and the evidence at trial does not show what type of object was used, a prima facie showing exists that the object was unknown to the grand jury. *Matson v. State*, 819 S.W.2d 839, 847 (Tex. Crim.App.1991). If evidence at trial shows what object was used to inflict the injury, an issue is raised with respect to whether the grand jury had information, when it returned the indictment, on the object used. *Matson*, 819 S.W.2d at 847. Here, the State was not required to show that the grand jury exercised due diligence because it was not conclusively established at trial what the substance was.

Appellant was charged with striking Armondo Valverde in the eyes with "an unknown liquid substance." At trial, Valverde and Spears frequently referred to the substance as urine and feces. They believed it to be so because of the smell. The witnesses also testified that they were not absolutely certain what the substance was and that it was, in fact, unknown to them. No chemical tests were performed to determine what the substance was.

Lay witnesses are qualified to testify in the form of opinion to matters rationally based on their perception and helpful to a clear understanding of their testimony. TEX.R.CRIM.EVID. 701. Feces and urine are common enough substances for the State's witnesses to give opinions about their smell. There was, however, no direct proof of the nature of the substance. The State's evidence did not conclusively establish that these were the substances appellant threw.

■ Further, Valverde testified that he immediately washed his face and eyes and that he cleaned up after the incident. He and the other witnesses testified that no chemical tests were done on the substance. Based upon this evidence, we find that no further investigative effort on the part of the grand jury would have led to greater certainty. As such, any actual failure of that body to make such an effort, and the State's failure to show it, is harmless and no variance will be found. *Huffman v. State*, 775 S.W.2d 653, 662 (Tex.App.—El Paso 1989, pet. ref'd); *Salazar v. State*, 711 S.W.2d 720, 725 (Tex.App.—Corpus Christi 1986, pet. ref'd). Viewing the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found beyond a reasonable doubt that the substance appellant threw was, in fact, unknown. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Matson*, 819 S.W.2d at 843.

■ With regard to appellant's claim that the State was required to allege the known characteristics of the substance in the indictment, we find that the complaint has been waived due to appellant's failure to object to the indictment in any way. *See generally Heras v. State*, 786 S.W.2d 72, 74 (Tex.App.—El Paso 1990, no pet.); TEX. CODE CRIM.PROC.ANN. § 1.14(b) (Vernon Supp.1992). We overrule point one.

By point two, appellant avers that the trial court erred in failing to quash the jury panel due to *Batson*[1] error. Appellant claims that the State's peremptory chal-

lenges of venirepersons Archie and Williams were racially motivated. To establish a prima facie case of purposeful discrimination in the selection of the petit jury, the defendant must show that "relevant circumstances raise an inference that the prosecutor used the peremptory challenge practice to exclude veniremen from the petit jury because of their race." *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723; *Linscomb v. State*, 829 S.W.2d 164, 165 (Tex.Crim.App.1992); TEX.CODE CRIM.PROC. ANN. § 35.261 (Vernon 1989).

■ The trial court required the prosecutor to articulate race-neutral reasons for the strikes. *See Reich–Bacot v. State*, 789 S.W.2d 401, 403 (Tex.App.—Dallas 1990, pet. dism'd, improv. granted); *Holman v. State*, 772 S.W.2d 530, 532 (Tex.App.—Beaumont 1989, no pet.). The prosecutor gave explanations for striking the two black women. Appellant's counsel did not offer any evidence showing the trial judge that the explanations were merely sham or pretext. *Keeton v. State*, 749 S.W.2d 861, 868 (Tex.Crim.App.1988). Counsel did not cross-examine the prosecutor. Nor did he offer any further evidence to disprove the State's reasons. In such an instance, the defendant will not be permitted on appeal to offer reasons why the explanations were not race-neutral. *Gardner v. State*, 782 S.W.2d 541, 545 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd); *Holman*, 772 S.W.2d at 532–533. Here, appellant wholly failed to rebut the prosecutor's explanations, which the court found to be race-neutral.

■ Still, the trial judge has a duty to determine if the prosecutor's reasons are contrived and must not necessarily take the prosecutor's reasons at face value. *Keeton*, 749 S.W.2d at 868. We review the evidence in the light most favorable to the judge's findings. Being careful to give great deference to the trial court's conclusions, we reverse only if the finding is clearly erroneous. *Whitsey v. State*, 796 S.W.2d 707, 726 (Tex.Crim.App.1989) (opinion on motion for rehearing).

■ At least three black veniremembers were seated in the first thirty-two members

---

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

of the panel. The race of one venire-member was not conclusively determined. That veniremember and one other black woman sat on the jury. At least two Hispanic veniremembers sat within the first thirty-two on the panel. The prosecutor exercised ten strikes, two upon blacks. He stated that he struck veniremember Archie because she has worked for TDC as a guard for the past eight years. Also, she told appellant's attorney that she often saw guards provoke prisoners. Appellant offered no evidence to show that the explanation was a sham or pretext. *Keeton*, 749 S.W.2d at 868, 874. A juror can be peremptorily struck based upon employment with the Texas Department of Criminal Justice. *Grimes v. State*, 779 S.W.2d 124, 126 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd); *Prosper v. State*, 788 S.W.2d 625, 627 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd). Such a reason is race-neutral. The trial court's finding with respect to Archie is not clearly erroneous.

■ The prosecutor also gave his reasons for striking Williams:

> Ms. Williams made the statement, while being questioned by [defense counsel], I do not feel good about someone accusing me of doing more than I have done. She said that in a tone that I took to be adverse to the prosecution. I said to her or to the panel quite innocently, "I'm going to quit picking on you-all," I had been questioning her and several others, "and ask someone else." And she looked at someone else and she looked at me and she said yes. Also the jury information sheet says she is a teacher. I believe my last statement I made offended teachers in the panel. I said something to the effect that most prosecutors cut teachers. They think they are too weak. And I think I offended her with that statement. For those reasons also I had to strike that witness (sic).

A finding of purposeful discrimination is a finding of fact based largely upon the trial judge's evaluation of credibility. A reviewing court should accord such a finding great deference and reverse only if it is clearly erroneous. *Whitsey*, 796 S.W.2d at 726.

■ The jury cards show that several other non-black veniremembers were teachers. Unlike Williams, they were not struck. Various factors contribute to a showing of discrimination, such as whether persons with the same characteristics as the challenged juror were not struck. *Whitsey*, 796 S.W.2d at 714. Disparate treatment is one of the factors cited in *Whitsey* which require particularly careful scrutiny. Explanations relying on intangible factors (such as tone of voice or eye contact) also merit close scrutiny since they are not objectively quantifiable.

First of all, we disagree with appellant's assertion that the prosecutor "targeted" Williams for questioning in hopes of evoking an adverse response. The prosecutor did direct questions to Williams personally. Yet, he did not prolong his questioning of her, nor did he ask her a disproportionate amount of questions in comparison to others. We further note that the prosecutor's statement about teachers came at the end of his voir dire. The prosecutor felt his comments may have offended teachers on the panel *and Williams in particular.* Viewing the evidence in the light most favorable to the trial judge's decision, Williams's tone of voice may indeed have belied hostility on her part towards the prosecutor or his case. The prosecutor's remark about teachers may, in fact, have been the final straw for Williams, even though it did not so strongly offend other teachers on the panel.

The defense attorney did not cross-examine the prosecutor or attempt to show that his explanations were a sham or pretext. *Vargas v. State*, 838 S.W.2d 552, 555–56 (Tex.Crim.App.1992). He did not even urge before the trial court the arguments he brings now. Reviewing the record as we do, under a ·clearly erroneous standard, without anything more from appellant, the trial court's determination was not clearly erroneous. Point two is overruled.

We AFFIRM the trial court's judgment.