George THORNTON, III, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–93–00015–CR.

Court of Appeals of Texas,
Tyler.

Dec. 30, 1994.

Clifton L. Holmes, Longview, for appellant.

Edward J. Marty, Tyler, for appellee.

Before RAMEY, C.J., and BILL BASS and HOLCOMB, JJ.

BILL BASS, Justice.

George Thornton, III, appeals from his conviction of aggravated robbery. Upon his plea of guilty, the jury convicted him and assessed his punishment at 69 years confinement and a fine of $10,000. Appellant brings four points of error. We will affirm his conviction.

■ In his first point, Appellant contends the trial court erred in denying his motion to quash the jury panel based on the State's use of peremptory challenges to remove jurors based on race. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). When determining the validity of a *Batson* claim, the standard of review is clear error. *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *Vargas v. State*, 838 S.W.2d 552, 554 (Tex.Cr.App.1992); *Wright v. State*, 832 S.W.2d 601, 604 (Tex.Cr. App.1992); *Tennard v. State*, 802 S.W.2d 678 (Tex.Cr.App.1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991). To determine whether the trial court's decision is clearly erroneous, we must look to the record to see whether we are left "with the definite and firm conviction that a mistake has been committed." *Hernandez*, 500 U.S. at 369, 111 S.Ct. at 1872.

The record in this case shows that ten African–Americans were in the strike zone. Four were excused for cause, four were peremptorily challenged by the State and one claimed a statutory exemption. One African–American served on the jury.

■ The trial court found that Appellant had made a prima facie showing that the State had used its peremptory challenges in a racially discriminatory manner. Once a court determines that a defendant has made a prima facie *Batson* case, the burden shifts to the prosecutor to come forward with race-neutral reasons for its strikes. *Keeton v. State*, 749 S.W.2d 861, 865 (Tex.Cr.App.1988); *Silva v. State*, 800 S.W.2d 912, 915 (Tex. App.—San Antonio 1990, no pet.). The prosecutor's explanation must present a clear, specific, and legitimate reason for each challenge. *Brooks v. State*, 802 S.W.2d 692, 694 (Tex.Cr.App.1991); *Miller–El v. State*, 790 S.W.2d 351 (Tex.App.—Dallas 1990, pet. ref'd). In the instant case, the prosecutor testified that no challenges had been based upon race, but that all the State's strikes had been exercised for racially neutral reasons. The reasons given for each strike were as follows:

(1) Number 5, Billie Walker Blaylock— because (1) her son, Cottie, had been prosecuted for aggravated robbery and was approximately Appellant's age, (2) she was related to persons with criminal histories, and (3) she failed to disclose that another son, Randy, had been arrested for criminal mischief.

(2) Number 24, Fred Wallace—because (1) he believed that rehabilitation should be the objective of punishment, and (2) he did not complete his juror information card.

(3) Number 27, Eleanor D. Andrews—because (1) she knew Appellant's mother, and (2) she believed that rehabilitation should be the objective of punishment.

(4) Number 36, Marcus D. Woodard—because (1) he knew Appellant, and (2) he did not disclose his complete criminal history, and (3) he believed that rehabilitation should be the objective of punishment.

The reasons given by the prosecutor are, on their face, racially neutral. However, Appellant argues that the disparate treatment of white and black panel members who shared common characteristics demonstrates that the reasons given are pretexts enlisted to cloak the prosecutor's racially discriminatory use of the State's peremptory challenges.

■ The prosecutor stated that he struck one black panel member, Billie Walker Blaylock, because her son had been prosecuted for aggravated robbery, and because she was related to other people with criminal histories. A venireperson's relationship to a person who has been charged with or convicted of a crime is a race-neutral reason for the exercise of a peremptory challenge. *United States v. Yankton*, 986 F.2d 1225, 1230 (8th Cir.1993); *Rasco v. State*, 739 S.W.2d 437, 439 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd). In addition, Blaylock was struck because she did not divulge the fact that another son had been arrested for criminal mischief. Failure to disclose information during *voir dire* is also a sufficiently race-neutral reason to peremptorily challenge a potential juror. *Perry v. State*, 770 S.W.2d 950, 952–53 (Tex.App.—Fort Worth 1989, no pet.); *Holman v. State*, 772 S.W.2d 530, 533 (Tex.App.—Beaumont 1989, no pet.).

■ Appellant complains that whites who were related to people with criminal records were not always peremptorily challenged. Specifically, he complains of disparate treatment concerning Barbara Bradley, a white venireperson whose son had been convicted of theft. However, a defendant does not prove racial discrimination simply by showing the jurors sharing a single characteristic were treated differently. *See United States v. Lewis,* 837 F.2d 415, 417 *cert. denied,* 488 U.S. 923, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988). In the instant case, several factors distinguish Bradley from Blaylock. First, Bradley's son had not been convicted of the same crime for which Appellant was charged. In addition, she was forthright in disclosing his conviction to the State. Finally, Bradley's juror card showed that she was an assistant court coordinator for Smith County, which made her a desirable venireperson for the State.

Appellant's claim of disparate treatment is also negated by the fact that another white venireperson, Raymond Lee Shoemaker, was peremptorily challenged because of his relationship to a person with a criminal history. Thus, Appellant's assertions are without merit.

■ Three other black members of the panel (Marcus D. Woodard, Fred Wallace and Eleanor D. Andrews) were stricken because they expressed a concern that rehabilitation should be the main objective of punishment. A venireperson's views regarding the importance of rehabilitation may be a race-neutral reason for the use of a peremptory challenge. *See, e.g., Parramore v. State,* 853 S.W.2d 741, 744–45 (Tex.App.—Corpus Christi 1993, pet. ref'd) (jurors' statements that rehabilitation was most important held to be racially neutral basis for peremptory strikes). Moreover, the record does not reflect disparate treatment by the State on this basis. The prosecutor testified that he had stricken each and every person who had answered that rehabilitation was the most important goal. Likewise, the record shows that each person answering favorably regarding rehabilitation was eliminated by either peremptory strike or challenge for cause, or by their exclusion from the strike zone.

■ Other race-neutral reasons given for the strikes against Woodard, Andrews and Wallace demonstrate that the State's peremptory challenges were not exercised in a racially discriminatory manner. In addition to their views on rehabilitation, Woodard and Andrews were properly challenged because of their relationship with Appellant and his family. Woodard stated that he was acquainted with Appellant, and Andrews confirmed that she knew Appellant's mother. A prospective juror may be peremptorily challenged because he is acquainted with a defendant or his family. *United States v. Iron Moccasin,* 878 F.2d 226 (8th Cir.1989); *DeBlanc v. State,* 799 S.W.2d 701, 711–13 (Tex. Cr.App.1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991); *Keeton v. State,* 749 S.W.2d 861, 870 (Tex.Cr.App. 1988). Woodard was also challenged for his failure to reveal his criminal history, *see Perry,* 770 S.W.2d at 952–53; *Holman,* 772 S.W.2d at 533, and for his previous convictions. *Wilson v. State,* 769 S.W.2d 682, 683 (Tex.App.—Beaumont 1989, no pet.); *Adams v. State,* 740 S.W.2d 60, 62 (Tex.App.—Dallas 1987, no pet.).

Wallace was challenged based upon his failure to complete his juror information card. Failure to adequately fill out the information card has been held to be a race neutral for striking a juror. *Satterwhite v. State,* 858 S.W.2d 412, 424 (Tex.Cr.App.), *cert. denied,* 510 U.S. 970, 114 S.Ct. 455, 126 L.Ed.2d 387 (1993); *Catley v. State,* 763 S.W.2d 465, 467 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd).

■ The appellate court must accord great deference to the rulings of the trial judge. *Robinson v. State,* 851 S.W.2d 216 (Tex.Cr.App.1991). The entire voir dire should be examined in order to determine if the prosecutor's explanations are legitimate or pretexts. *Kemp v. State,* 846 S.W.2d 289 (Tex.Cr.App.1992), *cert. denied,* 508 U.S. 918, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993). Reviewing the entire voir dire examination, we conclude that the trial judge's decision was not clearly erroneous. The State gave race-neutral explanations for its peremptory chal-

lenges, and Appellant did not counter them with evidence that leads us to believe that the State's explanations were a pretext in an attempt to discriminate. *See Salazar v. State,* 795 S.W.2d 187, 190 (Tex.Cr.App.1990); *Straughter v. State,* 801 S.W.2d 607, 612 (Tex.App.—Houston [1st Dist.] 1990, no pet.). Appellant's first point is overruled.

■ In Appellant's second point of error, he contends that the trial court erred in admitting the fruits of an illegal search. Specifically, he claims that State's Exhibit No. 14, which was a letter concealed in a suitcase in the trunk of his brother's car, should not have been admitted because it was discovered during a search performed outside the scope of the consent to search given by his brother. The State responds that the evidence was properly admitted since the search was conducted under the authority of the vehicle owner's consent. We agree.

The record from the suppression hearing reflects that on August 21, 1991, Appellant and his brother, Vincent Hart, were driving up to Appellant's apartment when they were taken into custody by the police. They were apprehended in Hart's car. Hart had control of the car, and voluntarily signed a consent form which gave the officers permission to search the vehicle. The officers confiscated everything inside the car and trunk as evidence, including suitcases and boxes belonging to Appellant. Appellant did not protest when the articles were removed from the car. The police took the items to the police department, and discovered State's Exhibit No. 14 inside a suitcase.

■ We find that the evidence was properly discovered during a consensual search. An exception to both the warrant and probable cause requirements is a search conducted by consent. *Meeks v. State,* 692 S.W.2d 504, 509 (Tex.Cr.App.1985); *Moreno v. State,* 821 S.W.2d 344, 350 (Tex.App.—Waco 1991, pet. ref'd). The search is valid if, in light of all the circumstances, the officers' belief that they had consent to search was objectively reasonable. *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *Moreno,* 821 S.W.2d at 344. The consent to search is not required

from the appellant where the permission to search was obtained from a third party who possessed authority over or other sufficient relationship to the premises or effects sought to be inspected. *Williams v. State,* 621 S.W.2d 609, 613 (Tex.Cr.App.1981); *Swift v. State,* 509 S.W.2d 586, 593 (Tex.Cr.App.1974).

In the instant case, the search of the vehicle which resulted in the recovery of State's Exhibit No. 14 was conducted under the authority of the vehicle owner's consent. Appellant's consent was not necessary since Hart possessed sufficient authority over the vehicle which the officers sought to inspect. *See Williams,* 621 S.W.2d at 613. Hart's consent was extended to the items found within the trunk since it had not been restricted to any particular area of the car. Appellant does not challenge the voluntariness of the consent, and there is no evidence in the record to suggest that the consent was not voluntary. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

■ The trial court is the sole fact finder at a hearing on a motion to suppress and may choose to believe or disbelieve any or all of the witnesses' testimony. *Cantu v. State,* 817 S.W.2d 74, 77 (Tex.Cr.App.1991). In the present case, the trial court chose to believe the State's evidence, and allowed the letter to be admitted into evidence. This ruling is supported by testimony that the officers reasonably believed that Hart had control and authority over the car, and that they obtained the evidence as a result of Hart's unrestricted consent to search his vehicle. Because the trial court is the sole fact finder at the suppression hearing, we are not at liberty to disturb any finding that is supported by the record. *Harris v. State,* 827 S.W.2d 49, 50 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). We overrule Appellant's second point.

■ In his third and fourth points of error, Appellant asserts that the court erred in admitting evidence of unadjudicated extraneous conduct during the punishment phase. Over Appellant's objection, the court admitted State's Exhibit 14, which was a letter written by Appellant to a friend in California.

Appellant claims that the State used the contents of the letter to portray him as a dangerous gang member, and to suggest his intent to harm another person. Evidence of unadjudicated prior offenses is not admissible in the punishment phase of a trial under TEXAS CODE OF CRIMINAL PROCEDURE ANN. art. 37.07(3)(a). *Grunsfeld v. State,* 843 S.W.2d 521, 523 (Tex.Cr.App.1992). Appellant argues that the evidence challenged here was improperly admitted under the standard established by *Grunsfeld*[1], and under the RULES OF EVIDENCE.

The letter discussed various persons who had been following Appellant, and were trying to claim "northside PBGC." It described these people as "busters." Appellant explained during his testimony that "PBGC" stood for Playboy Gangster Crew, and that "busters" were cowards. Appellant claims that the State attempted to use this evidence to show that he was a member of a gang.

The letter also described the circumstances surrounding a gunshot wound that Appellant suffered in California. Appellant wrote that he had been shot by Edward White, a/k/a "Poo." Appellant stated that Poo called him over, pulled out a gun and said "I don't want you around." Poo then shot him in the leg, and Appellant ran away.

In the letter, Appellant placed Xs across the shooter's name. Appellant testified that he put the Xs through the name because that was the way he wrote. The evidence did not disprove the assertion; however, the prosecutor later argued that the jury should refuse to believe Appellant's explanation about the Xs, and should protect Edward White from Appellant.

■ The key question on appeal is whether the alleged conduct constituted an "extraneous offense." Generally, proof of an extraneous offense is inadmissible. *See Chambers v. State,* 601 S.W.2d 360, 363 (Tex. Cr.App.1980). However, there must be some type of inadmissible evidence presented of the *accused's* prior criminal conduct before the rules relating to the admissibility of ex-

traneous offenses apply. *Baxter v. State,* 645 S.W.2d 812, 815 (Tex.Cr.App.1983); *Roach v. State,* 586 S.W.2d 866, 868 (Tex.Cr.App.1979); *Ramirez v. State,* 822 S.W.2d 240, 247 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd); *Cureton v. State,* 800 S.W.2d 259, 261 (Tex. App.—Houston [14th Dist.] 1990, no pet.).

■ In the instant case, the complained-of evidence does not demonstrate any criminal conduct committed by Appellant. He claims that the contents of the letter were used by the State to suggest that he was a member of a gang. However, the evidence only shows that *others* were asserting their gang membership against him—it does not show Appellant's membership. Moreover, evidence presented during the punishment phase which shows that a defendant is a member of a gang does not constitute evidence of extraneous offense. *See Anderson v. State,* 868 S.W.2d 915, 918 (Tex.App.— Fort Worth 1994, n.p.h.); *Beasley v. State,* 864 S.W.2d 808, 810–811 (Tex.App.—Fort Worth 1993, n.p.h.); *Ybarra v. State,* 775 S.W.2d 409, 411 (Tex.App.—Waco 1989, no pet.). Therefore, even if the letter had suggested that Appellant was a member of a gang, such evidence would not constitute an inadmissible extraneous offense.

■ The excerpts from the letter which described Appellant's shooting also failed to establish any inadmissible extraneous conduct by Appellant. The letter simply shows that Appellant was shot by Edward White, nicknamed "Poo," while he was in California. The Xs over White's name were explained as a writing technique, and this evidence remained uncontradicted. The prosecutor's arguments urging that Edward White should be protected do not elevate the Xs in the letter to the level of extraneous criminal conduct, as suggested by Appellant. Furthermore, in light of the evidence demonstrating the violent circumstances surrounding the crime and Appellant's prior conviction, any alleged error caused by the admission of the letter is

1. *Grunsfeld* has been legislatively "overruled" in 1993 when Article 37.07(3)(a) was amended to allow evidence of other unadjudicated crimes or bad acts under a "beyond a reasonable doubt" standard. However, such amendment applies only to offenses occurring after September 1, 1993.

harmless. TEX.R.APP.P. 81(b)(2). Appellant's third and fourth points of error are overruled.

The judgment of the trial court is **affirmed.**