Matoya CADDELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–92–00383–CR.

Court of Appeals of Texas, Tyler.

Feb. 28, 1995.

Rehearing Overruled July 26, 1995.

Hunter Brush, Tyler, for appellant.

Edward J. Marty, Tyler, for appellee.

RAMEY, Chief Justice.

Appellant Matoya Caddell ("Caddell") appeals his conviction for engaging in organized criminal activity. After a plea of "not guilty," Caddell was tried before a jury. It returned a "guilty" verdict, and Caddell's punishment was assessed at confinement for life. Caddell brings six points of error in this appeal. We will affirm his conviction.

■ In his first two points of error Caddell asserts that there was insufficient evidence to support his conviction, and that the trial court erred in overruling his motion for an instructed verdict. The standard for reviewing the sufficiency of the evidence is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Cr.App.1989).

One commits the offense of engaging in an organized criminal activity when, with intent to establish, maintain, or participate in a combination, he commits, or conspires to commit, one of a number of enumerated offenses, among them, the unlawful delivery of a controlled substance. Section 71.02, TEX.PENAL CODE. A combination is defined as three or more persons who collaborate in carrying on criminal activities. Section 71.01(a), TEX.PENAL CODE. When, as here, the indictment alleges a conspiracy to commit the enumerated offense,

> [g]uilt requires two ingredients: (1) intent to participate in a criminal combination, and (2) the defendant's performing some act, not necessarily criminal in itself, in furtherance of the agreement.

*Barber v. State*, 764 S.W.2d 232, 235 (Tex.Cr. App.1988). We thus look, first, at the evidence for the combination, and, thereafter, at the evidence of Caddell's participation through the commission of one or more of the overt acts alleged.

■ The State's evidence focused on the sale of crack cocaine in an area of Tyler known as the "Graveyard." On December 14 and 15, 1990, Tyler police clandestinely videotaped a large number of apparent drug transactions; approximately one hundred apparent purchases were observed during the five hours of videotaped surveillance. Typically the buyer would drive into the area, and sellers would approach the driver while still in his car. "Rocks" of crack cocaine would be displayed, and merchandise and money would change hands through the driver's side window. Two co-defendants, in exchange for immunity from prosecution, testified on behalf of the State, Ravin Tucker ("Tucker") and Rosiland Guster ("Guster"). Tucker, who was arrested after buying a rock of cocaine from an unidentified seller, testified regarding the details of three crack cocaine purchases he made in the area, including his last purchase, which was videotaped. Guster also testified to her own buying and selling of crack cocaine at the Graveyard.

Taken as a whole, the evidence showed, not only individual drug transactions, but the existence of a loosely organized drug market evidencing tacit consent and agreement among the various sellers. The existence of this criminal collaboration could rationally have been inferred by the jury from the cooperative activity involved in selling at a common time and place, with a common method, from the practice of selling for others, and from the giving of warnings when the police entered the area. There was also evidence of a common "burn barrel," into which contraband could be quickly thrown and destroyed in the event of a raid. All of this evidence was sufficient to support an inference by the jury that these activities were not discreet, unrelated drug transactions, but rather constituted a criminal collaboration with a common purpose, the sellers observing certain "conventions" among themselves to more profitably distribute crack cocaine.

The indictment alleged seven overt acts committed by Caddell in furtherance of the conspiracy to distribute cocaine, among them meetings with co-defendants, approaching vehicles driving into the area, and delivering cocaine. The evidence relevant to Caddell's own activities included his appearance on the clandestine videotape, engaging in many of the overt acts alleged in the indictment. In connection with these, Officer Gerald Hairford testified that Caddell's actions on the tape were, in his professional opinion, consistent with criminal behavior, drug transactions. Guster also testified that she had bought cocaine from Caddell at the Graveyard, and that she had seen him selling cocaine, both on his own behalf, and for others.

Reviewing this evidence in the light most favorable to the prosecution, we conclude that a rational jury could have found beyond a reasonable doubt from all this evidence that a criminal combination existed here to distribute crack cocaine, that Caddell committed at least some of the overt acts alleged in the indictment, and that such overt acts, in their context, evidenced Caddell's intent to participate in the criminal combination. Caddell's first two points of error are overruled.

■ In his remaining points of error, Caddell contends that the trial court erred in refusing to dismiss the array because of the failure of the State to offer racially-neutral reasons for its peremptory strikes, as required by *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).[1] The trial judge, following a hearing on the defendants' *Batson* motions, found that the State had not exercised its strikes in a racially-discriminatory manner. Our review of such finding is by a "clearly erroneous" standard; we are not to set the trial judge's finding aside unless the record leaves us with a definite and firm conviction that the trial judge was in error. *Wright v. State,* 832 S.W.2d 601, 604 (Tex.Cr.App.1992).

■ Caddell's third point of error objects to the strike exercised against Iona Lee Ates ("Ates"). According to Caddell, the State's proffered reason for excluding Ates, her family's criminal history, and her failure to voluntarily reveal it, was pretextual, since white jurors whose families had members with criminal convictions were not stricken. But the State, in fact, articulated a more complex rationale for such strikes; its general approach was to strike those with criminal records, or those whose addresses coincided with others with criminal records. But other factors taken into account included the seriousness of the offense, the proximity of relationship to the juror, and the juror's candor in admitting or volunteering such information. Additionally, some whom the State might have stricken under these criteria were left on the jury because of assertions that the persons charged were treated fairly, or that the juror tended nevertheless to believe the testimony of police.

■ The prosecution is not required by *Batson* to mechanically exclude every juror who might possess a characteristic which, standing alone, would lead the State to exercise a peremptory strike; "the decision whether to strike a venireman hinges upon the interplay of various factors...." *U.S. v. Lewis,* 837 F.2d 415, 417, fn. 5 (9th Cir.1988). Our review of the record satisfies us that the trial judge was not clearly wrong in concluding that the State's explanation for this strike, based on the number of persons in Ates' husband's local family possessing criminal records, and her not having volunteered such information, was not a pretext for racial discrimination, but was an acceptable justification of the State's strike. Caddell's third point of error is overruled.

■ Caddell's fourth, fifth, and sixth points of error also assert a *Batson* violation in the State's striking three other jurors. Specifically, Caddell complains that the State purportedly struck Burdia Mae Barnes, Earline Kelley, and Nina Ruth Cole, three African–Americans, because they answered "re-

1. Caddell is an African–American, and the State exercised its peremptory challenges against nine of the eighteen African–American in the strike zone, producing a jury with three African–Ameri-

cans. The trial judge found that this pattern of strikes arguably called for a *Batson* hearing to determine whether the State's strikes were exercised for non-racial reasons.

habilitation" to a question about which theory of punishment works best with crime, while at the same time failing to strike a white venireman, Samuel Crawford ("Crawford"), whose answer to that inquiry was the same.

The record discloses that the prosecutor, Robert Perkins ("Perkins"), in explaining his failure to strike Crawford, erroneously testified that Crawford had not answered "rehabilitation" to the disqualifying question. Despite this inaccuracy, Perkins' testimony established that, with the exception of Crawford, all persons, of whatever race, who answered "rehabilitation," were struck by the State, unless they were excused for cause. "A venireperson's views regarding the importance of rehabilitation may be a race-neutral reason for the use of a peremptory challenge." *Thornton v. State*, —— S.W.2d ——, —— [1994 WL 718990] (Tex.App.—Tyler 1994, no pet.). Where, as here, counsel is testifying with respect to a jury array of this size, and where, with the exception of one error, the facts bear out the State's assertion that it struck all veniremen that answered "rehabilitation," the trial judge was not clearly erroneous in concluding that the State's failure to strike Crawford was the result of inadvertence, not race-based animosity.[2] Caddell's fourth, fifth, and sixth points of error are overruled.

The judgment of the court below is affirmed.

**2.** We *note that* one defense *counsel* made a similar mistake of incorrectly attributing a particular answer on this issue to one of the jurors.