TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00668-CR







Darin Oneil Wilkerson, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0961763, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING







 Appellant Darin Oneil Wilkerson was convicted of the offense of murder. See Tex.
Penal Code Ann. § 19.02 (West 1994). The jury found appellant used a deadly weapon in the
commission of the offense and assessed appellant's punishment at imprisonment for seventy-five
years. Appellant presents eight points of error in which he asserts the trial court erred in
admitting evidence that was unlawfully obtained in violation of his constitutional rights. We will
overrule appellant's points of error and affirm the trial court's judgment.

 On February 20, 1996, Lyndemain McMillon, the murder victim, was shot on a
Wal-Mart parking lot by a passenger in a car passing in front of the store. When investigating
police officers received a description of the driver of the car, they suspected that the driver was
Bryan Dimery. The officers also believed from a description of the car that it belonged to
Dimery's mother. Earlier in the evening while in the store, the victim had engaged in an argument
with a person later identified as appellant. A tape made of customers entering and leaving the
store that night showed Dimery with a companion whom the officers could not identify. On
February 21, appellant bragged to some friends that he shot someone at the Wal-Mart store and
then threw his "gauge" into a field. On February 27, Dimery led police officers to a culvert in
a field near the Wal-Mart store where the officers found a short-barreled 20-gauge shotgun. 
Additional facts will be summarized in the discussion of various points of error.

 In his first and second points of error, appellant contends that the trial court erred,
(1) "in failing to suppress the results of a live lineup as being conducted in a manner which
deprived appellant of his due process rights," and (2) "in failing to suppress the in-court
identification of appellant by witnesses who had previously picked him out of a lineup." Appellant
has failed to direct our attention to a motion to suppress raising these issues. Nevertheless,
extensive testimony was adduced at a pretrial hearing, much of it concerning the lineup procedure. 
At the conclusion of the hearing, the trial court ruled:

 

 The Court finds that the identification procedure, lineup procedure in this
case, was not impermissibly suggestive and it did not lead to a chance, any chance
of misidentification or suggestiveness of that nature to cause an identification, and
the witness has identified the accused in this case based upon the events which
transpired on the day of the alleged offense. Motion to suppress in-court
identification is denied.


 Appellant complains that the lineup was impermissibly suggestive because "he was
the only light-skinned African American" in the lineup. Appellant for the first time complains on
appeal that a photographic exhibit in the record shows that he was taller than any of the others in
the lineup.

 A pretrial identification procedure may be so unnecessarily suggestive and
conducive to mistaken identification that to use that identification at trial would deny the accused
due process of law. See Stovall v. Denno, 388 U.S. 298, 301-02 (1967). A lineup is considered
unduly suggestive if other participants are greatly dissimilar in appearance from the suspect. See
United States v. Wade, 388 U.S. 218, 232-33 (1967). A lineup is suggestive when the accused
is placed with persons of distinctly different appearance, race, hair color, height or age. See
Foster v. California, 394 U.S. 440, 442-43 (1969). Minor discrepancies between lineup
participants will not render a lineup unduly suggestive. See Withers v. State, 902 S.W.2d 122,
125 (Tex. App.--Houston [1st Dist.] 1995, pet. ref'd). Neither due process nor common sense
requires participants in a lineup to be identical. See Buxton v. State, 699 S.W.2d 212, 216 (Tex.
Crim. App. 1985) (weight range of 40 pounds and height range of 5 inches upheld); Latson v.
State, 713 S.W.2d 137, 140 (Tex. App.--Houston [1st Dist.] 1986, pet. ref'd) (weight range 55
pounds, height range 6 inches, age range 18 years upheld). If an appellate court finds that the
challenged pretrial identification procedure is not, in fact, impermissibly suggestive, the court need
go no further because that finding would preclude a finding that the procedure created a substantial
likelihood of misidentification. See Webb v. State, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988);
Williams v. State, 675 S.W.2d 754, 757 (Tex. Crim. App. 1984).

 In the instant case, about a month after the offense was committed, officers
conducted a live identification lineup. Appellant was represented at the lineup by the same
attorney who defended him at the trial. Counsel's only objection to the lineup was that appellant
had a lighter complexion than the other four African Americans in the lineup. The officers
admitted that appellant was the lightest complected man in the lineup, and they unsuccessfully 
attempted to obtain other individuals for the lineup. In order to alleviate this disparity of
complexion, the officers changed their usual procedure in conducting the lineup. Instead of lining
up all five participants together, the officers brought each participant before the witnesses, one at
a time. When one of the four witnesses wanted to view one of the participants for a second time,
the officers again brought all five participants in the lineup before the witnesses separately. 
Exhibits in the record picture the lineup participants. The photographs show appellant to be
slightly lighter complected than the other participants. The record, other than the photographic
exhibit, does not show differences in the participants' age, weight, and facial hair. The
photographic exhibits show little difference in their age, weight, and facial hair. The heighth of
the lineup participants appears to range from 6 feet 4 inches to 6 feet 1 inch. Appellant appears
to be the tallest, but two of the other participants appear to be within one inch of appellant's
height. Two of the witnesses identified appellant. 

 In reviewing these points of error, we give deference to the trial court's findings;
we then review the issues de novo. See Loserth v. State, 963 S.W.2d 770, 773 (Tex. Crim. App.
1998). Because neither due process nor common sense requires individuals in a lineup to be
identical, we hold that the lineup procedure employed by the officers in this case, in spite of minor
discrepancies in the appearance of the participants, was not impermissively suggestive. See
Buxton v. State, 699 S.W.2d at 216; Williams, 675 S.W.2d at 757; Partin v. State, 635 S.W.2d
923, 926 (Tex. App.--Fort Worth 1982, pet. ref'd). Because we find the lineup identification
procedure was not unduly suggestive so as to be conducive to mistaken identification, we need not
further consider appellant's contention that the lineup procedure tainted his in-court identification. 
See Williams, 675 S.W.2d at 757. The indicia of reliability of the witnesses in-court identification
was not undermined by the lineup procedure. See Harris v. State, 827 S.W.2d 949, 959 (Tex.
Crim. App. 1992). We hold that the trial court did not err in refusing to suppress appellant's in-court identification. Appellant's first and second points of error are overruled.

 In his third and fourth points of error, appellant urges that the trial court erred in
denying his motion to suppress evidence and in admitting in evidence a written statement and
photographs of a tattoo on his arm. Appellant contends that this evidence was unlawfully obtained
as a result of officers unlawfully seizing and detaining him in violation of his fourth amendment
rights. Appellant also claims that because of his unlawful detention, the statement he gave resulted
from an involuntary waiver of his Miranda rights. Appellant insists that we make a de novo
review in deciding the issues presented.

 The standard for appellate review adopted by the Supreme Court now requires de
novo review to determine probable cause and reasonable suspicion. "[A]s a general matter
determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." 
Ornelas v. United States, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920 (1996). "[T]he legal rules
for probable cause and reasonable suspicion acquire content through application. Independent
review is therefore necessary if appellate courts are to maintain control of, and to clarify the legal
principles." Id. The de novo standard for appellate review of reasonable suspicion and probable
cause has been adopted by the Court of Criminal Appeals. See Guzman v. State, 955 S.W.2d 85,
87 (Tex. Crim. App. 1997). The issues here are not the determination of probable cause or
reasonable suspicion, but the closely related issues of whether appellant voluntarily accompanied
officers to the police station or whether he was unlawfully seized and was in custody when he
made the written statement at the police station.

 "A person has been 'seized' within the meaning of the Fourth Amendment only if,
in view of all the circumstances surrounding the incident, a reasonable person would have believed
that he was not free to leave." California v. Hodari D., 499 U.S. 621, 627-28 (1991); Anderson
v. State, 932 S.W.2d 502, 505 (Tex. Crim. App. 1996). The "reasonable person" standard
presupposes an innocent person. See Florida v. Bostick, 501 U.S. 429, 438 (1991); Anderson,
932 S.W.2d at 505. An officer's subjective intent to arrest is irrelevant unless that intent is
communicated to the suspect. United States v. Mendenhall, 446 U.S. 544, 554 n.6 (1980).

 A person who voluntarily accompanies investigating police officers to a certain
location--knowing that he is a suspect--has not been "seized" for Fourth Amendment purposes. 
Livingston v. State, 739 S.W.2d 311, 327 (Tex. Crim. App. 1987). In Dancy, the Court of
Criminal Appeals explained:


We are unaware of any rule of law which forbids lawfully constituted officers of
the law from requesting persons to accompany them, or of providing transportation
to the police station or some other relevant place in furtherance of an investigation
of a crime. Nor are we aware of any rule of law that prohibits police officers from
voluntarily taking a person to the police station or some other relevant place in an
effort to exonerate such person from complicity in an alleged crime. Nor are we
aware of any rule of law which forbids one to reject such a request. If the
circumstances show that the transportee is acting only upon the invitation, request,
or even urging of the police, and there are no threats, express or implied, that he
will be taken forcibly, the accompaniment is voluntary, and such person is not in
custody.


Dancy v. State, 728 S.W.2d 772, 778 (Tex. Crim. App. 1987); see also Anderson, 932 S.W.2d
at 505; Shiflet v. State, 732 S.W.2d 622, 628 (Tex. Crim. App. 1985).

 On February 29, 1996, after they received a tip concerning appellant, Detectives
Mark Gilcrest and Manuel Fuentes obtained a photograph of appellant and went to a housing
project to look for him. The officers knocked on an apartment door and were told by appellant's
father that appellant was not there. Neighbors told the officers that "the subject had gone out the
back window and was about to leave the apartment." Detective Fuentes, who did not testify,
encountered appellant behind the apartment. Detective Gilcrest testified that he was not present
when Fuentes "stopped" appellant but he, Gilcrest, "was present seconds after he [Fuentes] came
in contact with him [appellant]. . . . At that point, we identified ourselves, explained to Mr.
Wilkerson that we were investigating a homicide and requested that he go to the police station to
talk to us. . . . He agreed to go to the homicide detail and speak with us. . . . Detective Fuentes
told Mr. Wilkerson that he was not under arrest." Detective Gilcrest testified that he also told
appellant he didn't have to go with them. Neither detective "restrained" appellant in any way or
"coerced him in any way" to go to the police station with them. Gilcrest testified that appellant
was not handcuffed, was not under arrest, and was not in custody.

 At the police station, the officers interviewed appellant. They again identified
themselves and "explained the investigation and began to interview him about any knowledge he
might have concerning people involved in the investigation. . . . We were investigating to find
out who was involved in the murder, because we had some names and other information that we
didn't know who had been involved at that point. . . . He was one of the names we had received."

 Gilcrest testified that appellant, after being advised of and waiving his Miranda
rights in writing, voluntarily agreed to talk with the officers. At the police station, appellant was
not coerced in any way, was not promised anything, and was never restrained or in custody
according to Gilcrest's testimony. The interview was all recorded on videotape. Appellant never
asked to terminate the interview, never requested a lawyer, and never asked to leave. Detective
Gilcrest, using a laptop computer, reduced appellant's statement to writing and appellant signed
it. After the interview concluded, appellant signed a consent form and gave his fingerprint
impressions. Appellant's statement was in affidavit form. The facts he stated would exculpate
appellant but would tend to incriminate others in the murder that the detectives were investigating. 
One of the detectives then drove appellant home. On March 5, appellant was arrested by officers
armed with an arrest warrant. 

 Appellant's arguments summarized are that his youthfulness and his attempt to 
evade the officers are sufficient to overcome Detective Gilcrest's testimony and show that the
officers unlawfully seized him, placed him in custody, and that he did not voluntarily waive his
constitutional rights. We first give deference to the trial court's implied findings of fact and
conclusions that appellant was not unlawfully seized and placed in custody before he made the
statement. We then review the issues de novo. See Guzman, 955 S.W.2d at 87. From the totality
of the circumstances, we hold that appellant was not unlawfully seized or placed in custody and
that appellant voluntarily gave the detectives the affidavit and consented to having his arms
photographed. The trial court did not err in denying appellant's motion to suppress and in
admitting this evidence over appellant's objections. Appellant's third and fourth points of error
are overruled.

 In his fifth point of error, appellant claims that the trial court erred in admitting in
evidence a shotgun and photographs of the shotgun over his objection that this evidence was not
relevant to appellant's case. Detective Gilcrest testified that, a week after this offense was
committed, Bryan Dimery led him to a field near the Wal-Mart store where the shotgun was found
in a culvert. The detective testified about locating the gun and fully described the weapon as a
short-barreled Winchester, model 370, 20-gauge shotgun. When the gun was found in the culvert,
it had been broken down into two pieces. The officer's testimony concerning the shotgun was all
before the jury before appellant's relevancy objection was made. The trial court ruled that
appellant's objection was not timely and admitted the weapon and photographs of the weapon in
the culvert where it was found. The trial court's ruling was proper. Appellant did not timely
object to preserve for review his objection to the admission of this evidence. Further, it appears
from the record that the relevancy objection did not have merit. The victim was killed by a slug
fired from a shotgun. In his affidavit, appellant related that he knew Bryan had a 20-gauge
shotgun because he had sold it to Dimery. Appellant had bragged to friends that he shot a man
at the Wal-Mart with his "gauge"--meaning a shotgun--and that he had thrown it into a field near
the store. The evidence admitted was relevant. See Tex. R. Evid. 401, 402. Appellant's fifth
point of error is overruled.

 In his sixth, seventh, and eighth points of error, appellant insists that the trial court 
erred at the punishment phase of the trial in admitting in evidence an affidavit that appellant gave
to police officers more than two months before the instant offense was committed. The officers
were investigating an unrelated murder case at that time. Appellant urges that the affidavit was
obtained from him in violation of his constitutional rights because he was not given Miranda
warnings, and in violation of his statutory rights as a juvenile. Furthermore, appellant says the
affidavit was admitted in violation of Rule 403 of the Texas Rules of Evidence. The affidavit
given by appellant in the earlier investigation was given while he was still a juvenile. In this
affidavit, appellant named eleven young men who had attended a Halloween party and described
them by their age, dress, residence, and gang affiliation. Appellant's affidavit related that
"everyone" of these young men at the party was armed. "Craig had a 9mm Glock 17 shot. King
Mike had a street sweeper." Appellant, in his affidavit, further related that while he was at the
party he was told by "Big C. J. and another dude . . . that they had just smoked some dude . . .
at a carwash on Loyola." They said they had shot a rapper and his girl friend. "They were
laughing and turning up 40. . . . They looked hype; their eyes were like they were on drugs like
cocaine." When appellant made the affidavit, he was not a suspect and was not the target of the
investigation. Appellant was never charged with that offense.

 At the punishment phase of a trial, evidence that the defendant was associated with
gang members is admissible as evidence of the defendant's character. See Tex. Code Crim. Proc.
Ann. art. 37.07, § 3(a) (West 1981 Supp. 1998); Tex. R. Evid. 404(c); Beasley v. State, 902
S.W.2d 452, 457 (Tex. Crim. App. 1995); Anderson v. State, 901 S.W.2d 946, 950 (Tex. Crim.
App. 1995); Thornton v. State, 925 S.W.2d 7, 12-13 (Tex. App.--Tyler 1994, pet. ref'd); Ybarra
v. State, 775 S.W.2d 409, 411 (Tex. App.--Waco 1989, no pet.). When appellant gave the
investigating officers the witness-affidavit, he was not in custody, he didn't confess to any crime,
and he was never charged with the offense about which he gave the affidavit. In these
circumstances, it was unnecessary to advise him of the constitutional rights mandated by Miranda. 
See Miranda v. Arizona, 384 U.S. 436 (1966). Appellant's contention that the affidavit was
inadmissible because he was not given Miranda warnings is without merit.

 As the trial court observed, no law prevents a juvenile from making an affidavit. 
See Sandone v. Dallas Osteopathic Hospital, 331 S.W.2d 476, 481 (Tex. Civ. App.--Dallas 1960,
writ ref'd n.r.e.). A juvenile who is not charged with being delinquent may make an affidavit
which is not inculpatory when made without being accorded Juvenile Code rights. Appellant's
contention that the affidavit was inadmissible because appellant had not been accorded Juvenile
Code rights is without merit.

 Appellant made a trial court objection that admission of the affidavit would require
the trial court to conduct "a balancing examination of the exhibit and rule on it based on that." 
The trial court responded that it had conducted a balancing test. Appellant did not request the trial
court to make specific findings for the record. A trial judge is not required to sua sponte place
any findings he makes or conclusions he draws in the record when engaging in a Rule 403 test. 
See Williams v. State, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997). Rule 403 favors the
admission of relevant evidence and carries the presumption that relevant evidence will be more
probative than prejudicial. See Jones v. State, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996)
(holding photographs related to defendant's gang activity properly admitted). The trial court did
not err in overruling appellant's Rule 403 objection to the admission of the affidavit. We overrule
appellant's sixth, seventh, and eighth points of error.

 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Aboussie, Kidd and Dally*

Affirmed

Filed: November 13, 1998

Do Not Publish
















 * Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).



llant, in his affidavit, further related that while he was at the
party he was told by "Big C. J. and another dude . . . that they had just smoked some dude . . .
at a carwash on Loyola." They said they had shot a rapper and his girl friend. "They were
laughing and turning up 40. . . . They looked hype; their eyes were like they were on drugs like
cocaine." When appellant made the affidavit, he was not a suspect and was not the target of the
investigation. Appellant was never charged with that offense.

 At the punishment phase of a trial, evidence that the defendant was associated with
gang members is admissible as evidence of the defendant's character. See Tex. Code Crim. Proc.
Ann. art. 37.07, § 3(a) (West 1981 Supp. 1998); Tex. R. Evid. 404(c); Beasley v. State, 902
S.W.2d 452, 457 (Tex. Crim. App. 1995); Anderson v. State, 901 S.W.2d 946, 950 (Tex. Crim.
App. 1995); Thornton v. State, 925 S.W.2d 7, 12-13 (Tex. App.--Tyler 1994, pet. ref'd); Ybarra
v. State, 775 S.W.2d 409, 411 (Tex. App.--Waco 1989, no pet.). When appellant gave the
investigating officers the witness-affidavit, he was not in custody, he didn't confess to any crime,
and he was never charged with the offense about which he gave the affidavit. In these
circumstances, it was unnecessary to advise him of the constitutional rights mandated by Miranda. 
See Miranda v. Arizona, 384 U.S. 436 (1966). Appellant's contention that the affidavit was
inadmissible because he was not given Miranda warnings is without merit.

 As the trial court observed, no law prevents a juvenile from making an affidavit. 
See Sandone v. Dallas Osteopathic Hospital, 331 S.W.2d 476, 481 (Tex. Civ. App.--Dallas 1960,
writ ref'd n.r.e.). A juvenile who is not charged with being delinquent may make an affidavit
which is not inculpatory when made without being accorded Juvenile Code rights. Appellant's
contention that the affidavit was inadmissible because appellant had not been accorded Juvenile
Code rights is without merit.

 Appellant made a trial court objection that admission of the affidavit would require
the trial court to conduct "a balancing examination of the exhibit and rule on it based on that." 
The trial court responded that it had conducted a balancing test. Appellant did not request the trial
court to make specific findings for the record. A trial judge is not required to sua sponte place
any findings he makes or conclusions he draws in the record when engaging in a Rule 403 test. 
See Williams v. State, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997). Rule 403 favors the
admission of relevant evidence and carries the presumption that relevant evidence will be more
probative than prejudicial. See Jones v. State, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996)
(holding photographs related to defendant's gang activity properly admitted). The trial court did
not err in overruling appellant's Rule 403 objection to the admission of the affidavit. We overrule
appellant's sixth, seventh, and eighth points of error.

 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Aboussie, Kidd and Dally*

Affirmed

Filed: November 13, 1998

Do Not Publish